**PUBLIC CITIZEN INC., Plaintiff,**

v.

**DEPARTMENT OF STATE,**
**et al., Defendants.**

**No. Civ.A. 98–1423(ESH).**

United States District Court,
District of Columbia.

May 18, 2000.

Michael Edward Tankersley, Public Citizen Litigation Group, Washington, DC, for plaintiff.

Anne L. Weismann, Richard G. Phillips, Jr., U.S. Department of Justice, Civil Division, Washington, DC, for defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff Public Citizen, a nonprofit organization, seeks to compel the production of agency records concerning the record preservation procedures of the Office of the U.S. Trade Representative ("USTR"), the National Archives and Records Admin-

istration ("NARA"), and the Department of State under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and to challenge under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, the date-of-request cut-off that the Department of State imposes on FOIA requesters. Public Citizen contends that the State Department, USTR, and NARA improperly withheld records in response to three FOIA requests. In addition, Public Citizen claims that the State Department's policy of not retrieving documents created after the date of the FOIA request imposes an improper and unreasonable limitation on the public's access to agency records under FOIA and is an improperly promulgated substantive rule under the APA. Defendants have filed motions to dismiss, for summary judgment, and for a protective order. Plaintiff has filed motions for summary judgment, judgment on the pleadings, and to strike the declarations of Frank Machak and Geraldine Phillips.

## FACTS

### Department of State Request

By letter dated April 17, 1998, Public Citizen requested State Department records, "issued or in use since October 22, 1997" that described the State Department's "current system" for managing "(i) word processing files containing documents such as letters, memoranda, reports, handbooks, directives, and manuals recorded on electronic media such as hard disks or floppy diskettes, (ii) and electronic mail messages that meet the definition of Federal records, and any attachments to the record messages." Letter from M. Tankersley to P. Shields, Grafeld Decl., Exh. 1. Public Citizen also requested "any disposition schedule submitted to [NARA] concerning the transfer or disposal of the electronic mail communications or word processing files described above" and any correspondence or other communications with NARA concerning the disposal of such records. *Id.* The State Department acknowledged receipt of the request by letter dated April 28, 1998, and indicated that the request would be processed on a first-in, first-out basis. Letter from J. Livornese to M. Tankersley, Grafeld Decl., Exh. 2. On May 7, 1998, the State Department sent a second letter notifying Public Citizen of the agency's date-of-request cut-off policy, *i.e.,* it does not retrieve documents originating after the date of the requester's letter. Letter from J. Livornese to M. Tankersley, Grafeld Decl., Exh. 3.

On July 23, 1998, the State Department released eight documents in response to the April 17, 1998 FOIA request, but withheld thirty pages of one document which contained entries from the State Department's Records Disposition Schedule computer database, because those entries were classified "confidential" under Executive Order 12,958 and were exempt from disclosure under FOIA Exemption 1. 5 U.S.C. § 552(b)(1). On September 4, 1998, the State Department notified Public Citizen that it had reviewed the withheld material and determined that 104 of the entries could be released, but 17 entries remained withheld under Exemption 1. *Id.* These 17 entries contained a description of records approved for disposition by NARA in schedules N1–59–91–18, N1–59–93–42, and N1–49–92–9 and the disposition period for the records. The 17 entries were not classified "confidential" when the State Department received Public Citizen's April 17, 1998 FOIA request.

On June 22, 1998, Public Citizen made a second (unrelated) FOIA request for records created between April 1, 1998 and November 1998 concerning the travel and appointment schedules of three State Department officials who negotiated the Multilateral Agreement on Investment, and concerning the schedules, minutes, and agendas from any meetings related to international investment issues. By letter dated July 1, 1998, the State Department notified Public Citizen that its second FOIA request was also subject to a date-of-request cut-off on retrieved documents.

The State Department apparently released documents to Public Citizen in response to this request on August 3, 1999. *See* Defendants' Status Report, filed 12/15/99. The Court is not aware if any documents were withheld in response to the June 22, 1998 request. Nor has Public Citizen challenged any FOIA exemption that may have been claimed in connection with the June 22, 1998 request.

### NARA Request

On October 6, 1998, Public Citizen sent a FOIA request to NARA seeking Department of State Records Schedules N1–59–95–4, N1–59–91–33, N1–59–93–42, and N1–59–92–9, and the appraisal memoranda for these schedules. On November 13, 1998, NARA released schedules N1–59–95–4 and N1–59–91–33 and their accompanying appraisal memoranda. NARA did not release the remaining schedules and appraisal memoranda because the agency had to consult with the State Department on the classification status of those records. NARA subsequently released portions of N1–59–93–42 and N1–59–92–9 and their respective appraisal memoranda, but upon advice of the State Department determined that the documents contained classified information and could not be released in their entirety. NARA is claiming exemption from disclosure under FOIA Exemption 1. 5 U.S.C. § 552(b)(1)

### USTR Request

By letter dated April 17, 1998, Public Citizen requested from USTR the same information that it sought in the April FOIA request to the State Department—records "issued or in use since October 22, 1997," describing USTR's current system for managing word processing files and e-mail messages, and any communication with NARA concerning the disposal of such records. Letter from M. Tankersley to S. Harrison, Overton Decl., Exh. 1. On July 23, 1998, USTR informed plaintiff that it had located three documents. Letter from S. Harrison to M. Tankersley, Overton Decl., Exh. 2. It released two of the documents and withheld one in its entirety, claiming exemption from disclosure on the basis of the attorney work-product privilege under FOIA Exemption 5. *See* 5 U.S.C. § 552(b)(5).

Public Citizen's original complaint challenged only (1) the State Department's use of a date-of-request cut-off in responding to FOIA requests, (2) the State Department's failure to release documents responsive to plaintiff's April 17, 1998 FOIA request to the State Department, and (3) the USTR's failure to release documents responsive to plaintiff's April 17, 1998 FOIA request to the USTR. Plaintiff amended its complaint in February 1999 to add claims regarding its June 22, 1998 FOIA request to the State Department and its October 6, 1998 FOIA request to NARA. The amended complaint added allegations that (1) the application of the State Department's date-of-request cut-off to the June 22, 1998 request was unlawful and (2) NARA's assertion of Exemption 1 to withhold two records disposition schedules and two appraisal memoranda was improper.

Defendants' motion to dismiss in part and for summary judgment, filed September 15, 1998, and plaintiff's motion for partial summary judgment, filed February 8, 1999, are directed at the original complaint only. Defendants' motion to dismiss and plaintiff's motion for partial summary judgment address Public Citizen's generic claim that the date-of-request cut-off is substantively and procedurally invalid. Defendants' motion for summary judgment addresses the State Department's decision to withhold 17 record entries under Exemption 1 in response to the April 17, 1998 request, and the USTR's decision to withhold a memorandum under Exemption 5 in response to the April 17, 1998 request. Plaintiff's motion for judgment on the pleadings, filed March 31, 1999, seeks to compel defendants to produce documents responsive to the June 22, 1998 request to the State Department and the October 6, 1998 request to NARA because, at the time the motion was filed, no documents

had been produced in response to those requests. Defendants' motion for partial summary judgment, filed June 4, 1999, covers only the decision by NARA to withhold documents under Exemption 1 in response to the October 6, 1998 FOIA request. Plaintiff has also filed motions to strike the affidavits of Frank Machak and Geraldine Phillips, which were submitted by the State Department and NARA in support of the decision to withhold the NARA documents. Defendants have filed for a protective order to bar Public Citizen from taking discovery on whether the NARA documents were publicly released prior to classification.

## ANALYSIS

### I. DEPARTMENT OF STATE'S DATE–OF–REQUEST CUT–OFF

Public Citizen challenges the Department of State's policy of imposing a date-of-request cut-off on searches conducted pursuant to FOIA requests. The Department of State places the following conditions on FOIA searches:

> The cut-off date for retrieving documents is the date of the requester's letter. Accordingly, no documents which originated after the date [the requester's] letter will be retrieved.

> Only existing documents are subject to the Freedom of Information Act. The Act does not provide for the creation of documents, compilation of data, preparation of lists, analyses of events, etc. *See* Letter from J. Livornese to M. Tankersley, Grafeld Declaration, Exh. 3.

Plaintiff challenges the date-of-request cut-off generically and as applied to its April 17, 1998 and June 22, 1998 FOIA requests to the Department of State.

Public Citizen asserts that the date-of-request cut-off condition for processing FOIA requests is substantively invalid under FOIA, because it is not the least restrictive feasible condition and it imposes an unreasonable burden on FOIA requesters, who have a statutory right to release of all reasonably current records. Plaintiff argues in favor of a date-of-search cut-off as a more reasonable, less restrictive alternative. Plaintiff further contends that the cut-off condition is procedurally unlawful, because it is a substantive rule that was not published for notice and comment, as required by the APA, 5 U.S.C. § 553(b).

The State Department argues in its motion to dismiss that Public Citizen's challenge to the cut-off policy must fail because (1) the claim is not ripe under the two-pronged test announced in *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); (2) the plaintiff lacks standing to challenge the cut-off condition as applied to the April 17, 1998 request, because it was not denied any documents and, therefore, suffered no injury as a result of the cut-off; and (3) even if the issue is ripe and Public Citizen has standing to raise it, the cut-off condition is valid under FOIA. The State Department further contends that (4) the FOIA statute specifically addresses the type of notice that is required, making general APA notice and comment rules inapplicable; or (5) alternatively, the cut-off is exempted from the public notice and comment requirements of the APA, because it is an internal agency procedure; (6) plaintiff received sufficient notice of the cut-off condition; and (7) the search conducted by the agency was reasonable.

Public Citizen responds in its summary judgment motion that the cut-off policy is justiciable because it has a pending FOIA request for State Department travel records, filed June 22, 1998, to which the cut-off has been applied. In addition, as a frequent FOIA filer, Public Citizen will continue to be "harmed" in the future if the cut-off is not struck down. Public Citizen argues that the cut-off is a substantive rule that affects its primary rights under FOIA and cannot be exempted from the APA notice and comment requirements.

## A. Substantive Validity of the Date–of–Request Cut-off under FOIA

 Both the adequacy of a search conducted in response to an individual FOIA request and the adequacy of an agency's general search methods are determined by a test of "reasonableness." *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1101 (D.C.Cir.1983) ("The same standard of reasonableness that has been applied to test the thoroughness and comprehensiveness of agency search procedures is equally applicable to test the legality of an agency rule establishing a temporal limit to its search effort."); *Weisberg v. United States Dep't. of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983) ("The adequacy of an agency's search is measured by a 'standard of reasonableness,' and is dependent upon the circumstances of the case.") (citation omitted.) A "time-of-request cut-off" policy is only valid if "the limitation is consistent with the agency's duty to take reasonable steps to ferret out the requested documents." *McGehee*, 697 F.2d at 1101. The agency bears the burden of showing that "the time limitation placed on the search it undertakes in a particular case comports with its obligation to conduct a reasonably thorough investigation." *Id.*

In the summary judgment context, the moving party in a FOIA case must prove that no substantial material facts are in dispute and that judgment as a matter of law is warranted. Here the Department of State bears the burden of demonstrating that "no material fact relevant to the reasonableness of its use of a time-of-request cut-off date is in dispute and that the evidence established that the procedure employed was reasonable as a matter of law." *Id.* at 1102. In making its decision, this Court is entitled to rely on the affidavits of the agency, as long as the affidavits are "relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency." *Id.* However, before the Court can make any ruling on the validity of the date-of-request cut-off under FOIA, plaintiff must have standing to challenge the cut-off and the issue must be ripe for adjudication.

## B. Standing and Ripeness of Plaintiff's Challenge to Date–of–Request Cut–Off

 A plaintiff has standing to bring suit when three elements are satisfied: (1) plaintiff has suffered "an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) there is a causal connection between the alleged injury and conduct that is fairly traceable to the defendant; and (3) it is "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff bears the burden of proving standing. *Id.*

 Public Citizen asserts standing on the bases of its April 17, 1998 and June 22, 1998 FOIA requests to the State Department and its status as a frequent FOIA request filer. The Court finds that Public Citizen lacks standing to challenge the date-of-request cut-off policy on the basis of the April 17, 1998 FOIA request, because Public Citizen suffered no "injury-in-fact." The State Department did not apply the date-of-request cut-off to this search. The Grafeld Declaration makes clear that, "as a courtesy to plaintiff, the Department retrieved all documents responsive to his request from the date of the search." Grafeld Decl. at para. 9. Moreover, any hypothetical injury that plaintiff claims to have suffered in connection with the April 17, 1998 request was not causally connected to any conduct by the State Department, nor would it have been redressable by a decision in plaintiff's favor, because the State Department applied precisely the date-of-search cut-off condition that Public Citizen seeks to have this Court impose.

With respect to Public Citizen's June 22, 1998 request, the Court finds standing, assuming that the date-of-request cut-off was applied to Public Citizen's June 22, 1998 request. In that case, Public Citizen would suffer a concrete "injury," for it is possible that requested documents created from June 23, 1998–October 1998 would not be captured by the search. That "injury" could be fairly traced to the fact that the State Department stopped searching for documents created after the date of the FOIA request, and the "injury" could be redressed if the Court imposed a later cut-off date. Having established standing to challenge application of the cut-off to the June 22, 1998 request, the Court must now determine if that claim is ripe for adjudication. Similarly, Public Citizen may have standing as a "frequent filer," and as to this claim as well, the Court must determine if the plaintiff's generic challenge to the cut-off date's validity is ripe.

■ To determine whether the validity of the date-of-request cut-off is an issue ripe for adjudication, the Court turns to the two-prong test expressed in *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967):(1) fitness of the issues for judicial decision and (2) hardship to the parties of withholding the court's consideration. For an issue to be "fit" for decision, it must be purely legal in nature and must represent a "final agency action." *Id.* For a claim to be considered "purely legal," the validity of the agency's exercise of authority should not vary based upon the facts of the case. *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 750 (D.C.Cir.1987) (Green, J., writing separately.) Further, the regulation at issue should not be treated as "informal" or the mere ruling of a subordinate official. *Abbott* at 151, 87 S.Ct. 1507. In addition, the *Abbott* court looked at whether the impact of the challenged regulations was sufficiently direct and immediate as to render the issue appropriate for judicial review. In *Abbott,* judicial review was appropriate because the regulation at issue placed all

drug manufacturers in the position of either incurring enormous costs to change their advertising and promotional materials, or risk serious civil and criminal penalties for unlawfully distributing misbranded drugs.

■ Here, the Court concludes that Public Citizen's generic challenge as a "frequent filer" to the facial validity of the State Department's date-of-request cut-off policy does not pass the *Abbott* test. The issue is not ripe for judicial review because it is not "purely legal" in nature given the court's decision in *McGehee v. CIA.* In *McGehee* the court held that "generic" review of the validity of an agency's temporal cut-off on FOIA requests is not appropriate. Rather, courts must assess the validity of the cut-off condition in the context of the facts at hand. *McGehee,* 697 F.2d at 1102–03 ("[W]e are compelled to turn to the particular facts of the case before us to assess the reasonableness of the agency's conduct.") The Court agrees with the Department of State that the validity of the cut-off condition is highly fact-bound, since the "reasonableness" of the agency's search procedures may depend upon any number of factors, including, *inter alia,* the size of the agency's FOIA request backlog, the turn-around time for current requests, the good or bad faith of the FOIA officers conducting the search, the number of documents involved, and the time-sensitivity of the request. This case is distinguishable from *Better Government Assoc. v. Dept. of State,* 780 F.2d 86, 92 (D.C.Cir.1986), where the court determined that both plaintiff's facial challenge and its challenge under the APA presented purely legal questions which could not be fleshed out by further factual development, and from *Payne Enterprises, Inc. v. United States,* 837 F.2d 486 (D.C.Cir.1988), an atypical ripeness case, where officers at the Air Force Logistics Command for two years flatly refused the plaintiff's FOIA requests, in spite of their acknowledgment that no FOIA exemption

provided grounds for withholding the documents.

The Department of State also raises an issue as to whether the date-of-request cut-off is a "final agency action," since the agency occasionally makes exceptions to the cut-off policy and turns over documents created after the date of the request. *See* Grafeld Decl. at para. 9. The State Department explicitly denies that every search is governed by the cut-off policy; rather, the agency insists that it decides on a case-by-case basis whether a more extensive search is a warranted, based upon the specific facts of the individual search. Indeed, the Grafeld Declaration establishes that the date-of-request cut-off was not applied to plaintiff's April 17, 1998 request. The date-of-request cut-off policy is not "crystallized" until it is actually applied to an individual FOIA request. The Court concludes that its analysis of the cut-off policy would benefit from seeing the policy applied in a concrete setting. *See City of Houston v. Dep't. of Housing and Urban Development*, 24 F.3d 1421, 1431 (D.C.Cir.1994) ("[T]he court must consider whether the court or the agency would benefit from postponing review until the policy in question has sufficiently 'crystallized' by taking on more definite form.")

For similar reasons, the Court also finds that the challenge to the cut-off policy, as applied to the June 22, 1998 FOIA request, is not ripe. At the time Public Citizen amended its complaint to add the June 22, 1998 request, the State Department had not turned over any documents in re-sponse to that request.[1] Thus, it is not possible at this time to know whether the State Department has applied the date-of-request cut-off to that search, or, as the agency did with Public Citizen's April 17, 1998 request, exercised its discretion to retrieve documents created after the date of the request. Rather, Public Citizen's claim merely anticipates that the State Department will apply the cut-off to any search it conducts. In this context it is impossible for the Court to make any determination about the reasonableness of any date-of-request cut-off as applied to the June 22, 1998 request, for the Court has no information about how many documents were involved in the search, what documents were collected, what documents were withheld, the chronological parameters of the search, or whether the date-of-request cut-off was even applied.

To summarize, there has been no opportunity in this case to see how the cut-off policy would be applied in a concrete setting. The State Department did not apply the date-of-request cut-off to Public Citizen's first FOIA request, dated April 17, 1998. As a result, plaintiff has not, as a matter of law, suffered any "injury in fact;" and therefore plaintiff lacks standing to challenge the rule's application to its first request. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that in order to have standing plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.")[2] The record

---

1. The Court understands from Defendants' Status Report, dated December 1999, that the State Department has now responded to the June 22, 1998 request. However, plaintiffs have not amended the complaint to add any additional facts or allegations based upon the government's response.

2. Even assuming *arguendo* that plaintiff has standing to challenge the April 17, 1998 request, the Court would find that the search conducted by the State Department, including the cut-off policy that the agency applied, was reasonable. The State Department responded in a timely manner and conducted a diligent and thorough search for the documents that plaintiff requested. In this instance, the agency appropriately exercised its discretion to extend the search to documents created after the date of Public Citizen's FOIA request. However, even if the agency had applied the date-of-request cut-off to the April 17, 1998 request, the search would have been reasonable, because the agency reasonably could have interpreted a request for "current" documents to mean those in existence

regarding plaintiff's second FOIA request for State Department travel records, dated June 22, 1998, needs further factual development before any determination regarding the reasonableness of the cut-off rule, as it may have been applied to that request, can be made.

Finally, Public Citizen has not demonstrated that the hardship it will suffer is sufficient to outweigh the State Department's institutional interest in deferred review. *See Better Government Assoc. v. Dept. of State, et. al.,* 780 F.2d 86, 92 (D.C.Cir.1986) ("In order to outweigh any institutional interests in the deferral of review, appellants must demonstrate 'hardship,' *i.e.*, that the 'impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs.' ") Unlike the fee waiver rule in *Better Government,* the State Department's date-of-request cut-off does not act to "chill" the ability and willingness of organizations to make FOIA requests. In *Better Government,* the court permitted generic review of the State Department's fee waiver policy, in part, because the court found that the "primary conduct" of the appellant nonprofit public interest groups was affected by the fee waiver guidelines. Absent a fee waiver, the court found that nonprofit groups might forego making FOIA requests due to budgetary constraints. *Id.* at 93. The date-of-request cut-off does not present a similar barrier to FOIA activity. Public Citizen may be forced to file multiple FOIA requests instead of filing a single request for documents past, present, and future; but this alone does not rise to the level of a "hardship" under the *Abbott* test. *Webb v. Dep't. of Health and Human Services,* 696 F.2d 101, 107 (D.C.Cir.1982)

(holding a challenge to an FDA regulation unripe where the only hardship was having to file another FOIA request and challenge the agency's response thereto.) Because the issue is not ripe for decision, the Court will not determine the substantive validity of the date-of-request cut-off under FOIA.

## C. Procedural Validity of the Date–of–Request Cut–Off—Notice and Comment Requirements Under the APA

 While the issue of the substantive validity of the date-of-request cut-off is not ripe for decision, plaintiff's claim that the cut-off policy is procedurally defective, in violation of the APA, is ripe. Public Citizen contends that the State Department's date-of-request cut-off policy is procedurally invalid because it has not been subjected to public notice and comment, as required by the APA, 5 U.S.C. § 553. The Court disagrees.

The APA provides that "rules of agency organization, procedure, or practice" are exempt from the general notice and comment requirements. 5 U.S.C. § 553(b)(A). The Court finds that the State Department's date-of-request cut-off is a procedural rule exempt from the general notice and comment requirements of § 553. The Court acknowledges that Congress intended the exceptions to the APA's notice and comment provision to be limited; however, the date-of-request cut-off falls squarely within those "internal house-keeping measures organizing agency activities" that courts have consistently excepted. *American Hospital Assoc. v. Bowen,* 834 F.2d 1037, 1045 (D.C.Cir.1987).

The D.C. Circuit in *American Hospital* set out the following "themes" common to

at the time the request was received. *See Tuchinsky v. Selective Service System,* 418 F.2d 155, 158–59 (7th Cir.1969) (holding that a request for "current" records may reasonably be read to mean those existing at the time the request was made.) In addition, the agency processed the FOIA request expeditiously—only three weeks elapsed between the time the State Department received Public

Citizen's FOIA request and the date of the notice to Public Citizen that the request was being processed—so it cannot be said that an unreasonable amount of time elapsed between the date of the request and the date of the search. Thus, unlike *McGehee,* there can be absolutely no suggestion of bad faith by the agency.

the § 553 exceptions recognized by the court: they "accommodate situations where the policies promoted by public participation in rulemaking are outweighed by the countervailing considerations of effectiveness, efficiency, expedition and reduction in expense," they are not determinative of issues or rights addressed, and they do not foreclose alternative courses of action or conclusively affect rights of private parties. *American Hospital*, 834 F.2d at 1045 (quoting *Guardian Fed. Sav. & Loan Assoc. v. Federal Sav. & Loan Ins. Corp.*, 589 F.2d 658, 662 (D.C.Cir.1978)). Specifically, the exemption pertaining to rules of agency organization, procedure, or practice is designed to "ensure that agencies retain latitude in organizing their internal operations." *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C.Cir.1980). This exemption covers "agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which parties present themselves or their viewpoints to the agency." *American Hospital*, 834 F.2d at 1047. "Over time, [the D.C. Circuit] in applying the § 553 exemption for procedural rules has

gradually shifted focus from asking whether a given procedure has a 'substantial impact' on parties, ... to inquiring more broadly whether the agency action also encodes a substantive value judgment or puts a stamp of approval or disapproval on a given type of behavior. The gradual move away from looking solely into the substantiality of the impact reflects a candid recognition that even unambiguously procedural measures affect parties to some degree." *Id.*

The date-of-request cut-off employed by the State Department in processing FOIA requests—like HHS' Peer Review Organization directives in *American Hospital*,[3] the FCC's decision to freeze applications for television licenses on certain frequencies in *Neighborhood TV Co. v. FCC*, 742 F.2d 629 (D.C.Cir.1984),[4] the establishment by the FCC of an application filing "cut-off" date in *Ranger v. FCC*, 294 F.2d 240 (D.C.Cir.1961),[5] the FCC's implementation of "hard look" rules in *JEM Broadcasting Co. v. FCC*, 22 F.3d 320 (D.C.Cir. 1994),[6] and the OSHA calculus utilized by the Department of Labor to target em-

---

3. The D.C. Circuit held that the HHS-issued program manuals and directives which set forth an enforcement plan for HHS' agents in monitoring the quality and necessity of various health care operations were "classic procedural rules," exempt under § 553. They established the frequency and focus of agency review on medical procedures with the highest potential for statutory violations, and thus were a way for the agency to allocate limited resources. 834 F.2d at 1049.

4. The D.C. Circuit held that the FCC's decision to freeze all opposed translator applications and to re-order processing of the applications according to a tiered system was not subject to APA notice and comment procedures. The court held that the freeze and processing reorder decisions affected the plaintiff's interests "only incidentally," first by delaying consideration of Neighborhood's applications and second by subjecting Neighborhood's applications to increased competition with qualified applicants; but those decisions did not interfere with plaintiff's ultimate interest, which was to compete with other qualified applicants for a translator license. 742 F.2d at 300–01.

5. The D.C. Circuit held that the FCC's imposition of a "cut-off" date for license applications was a procedural rule, necessary to streamline and bring closure to the process of assigning station licenses. "Of course all procedural requirements may and do occasionally affect substantive rights, but this possibility does not make a procedural regulation a substantive one." 294 F.2d at 243.

6. The D.C. Circuit upheld as "procedural" the FCC's stringent application processing rules, which established a fixed window of time in which to apply to use a particular channel. Under the rules, all incomplete or inaccurate applications were rejected without an opportunity to cure the defect. Although the "hard look" rules had a harsh impact on applicants, "the public interest in receiving new service as quickly as possible would be better served by a more streamlined review process, and ... such benefit outweighed the cost of the new rules." The critical fact was that the 'hard look' rules "did not change the substantive standards by which the FCC evaluates licensing applications." 22 F.3d at 327.

ployers for inspection in *U.S. Department of Labor v. Kast Metals Corp.*, 744 F.2d 1145 (5th Cir.1984) [7]—is purely procedural. It does not alter the rights and interests of the parties, merely the manner in which the parties exercise those rights and interests. The cut-off does not deny any FOIA requester the right to obtain agency documents, which is plaintiff's primary interest here. It merely guides the agency's response to FOIA requests by establishing an end point for the collection of documents pursuant to any single request, thereby decreasing the processing time for all requests. Nor does the cut-off provision leave Public Citizen without options. On the contrary, all Public Citizen must do in order to obtain documents created after the date of the FOIA request is to file another FOIA request. Finally, the cut-off encodes no substantive value judgment. The search is terminated on the date of the request without reference to the subject matter of the request.[8]

The myriad cases cited by Public Citizen are distinguishable because they involved rules which clearly affected the primary rights and interests of the parties involved, not merely the manner in which the parties exercised those rights and interests. For example, in *United States v. Picciotto*, 875 F.2d 345 (D.C.Cir.1989), the appellant was subjected to criminal prosecution on the basis of a substantive agency rule for which there had been no notice or comment. Likewise, *Syncor International v. Shalala*, 127 F.3d 90 (D.C.Cir.1997), involved a decision by the FDA to subject an entire category of previously unregulated pharmaceuticals to FDA regulation without providing the pharmaceutical industry an opportunity to respond. In *Pickus v. United States Board of Parole*, 507 F.2d 1107 (D.C.Cir.1974), regulations used by the Board of Parole to determine an inmate's eligibility for parole were held to be substantive rules under the APA. *Batterton v. Marshall*, 648 F.2d 694 (D.C.Cir. 1980), involved the Department of Labor's modification of the method used to calculate unemployment statistics—figures which, in turn, directly affected the allocation of emergency job program monies. In *National Assoc. of Home Health Agencies v. Schweiker*, 690 F.2d 932 (D.C.Cir. 1982), HHS violated the APA by taking away the right of Home Health Agencies ("HHAs") to select whether to deal directly with the Secretary or with an intermediary of their own choosing, resulting in significant expense to the HHAs.

■ Since the general notice and comment procedures of § 553 of the APA do not apply, the only publication requirement applicable to the date-of-request cut-off is § 5 U.S.C. 552(a), which requires each agency to publish its rules of procedure in the Federal Register. Although the date-of-request cut-off has never been published in the Federal Register, it is nevertheless valid because Public Citizen received actual and timely notice of the condition in the Department of State's May 7, 1998 response. *See* 5 U.S.C. § 552(a)(1). Unlike the situation in *McGehee v. CIA*, where the agency, over the course of 2½ years, never provided notice that it had applied a date-of-request cut-off to its retrieval efforts, Public Citizen received notice of the cut-off rule within a week of submitting each FOIA request. Thus, the Department of State has satisfied all relevant requirements under the APA.[9]

7. The Fifth Circuit held that OSHA's inspection plan "fell far short of the sort of investigative activity likely to have the intent or effect of substantially altering party behavior." The plan merely set forth procedural steps to guide the agency in exercising its statutory authority to conduct investigations. 744 F.2d at 1150.

8. The Court does not interpret the statement in the Grafeld Affidavit that the agency occasionally retrieves documents created after the date of the FOIA request to indicate that the agency performed any substantive assessment of the request in deciding whether to make an exception to the date-of-request cut-off rule.

9. Because the Court finds that the date-of-request cut-off is valid under the APA as a

## II. FOIA EXEMPTION CLAIMS

Public Citizen challenges three agency decisions to withhold documents under FOIA: (1) the State Department's decision to withhold, under FOIA Exemption 1, certain classified entries in the State Department's Records Disposition Schedule concerning the State Department's Bureau of Intelligence and Research; (2) the State Department and NARA's decision to withhold, under Exemption 1, NARA Records Disposition Schedules N1–59–93–42 and N1–59–92–9 and two related NARA record appraisal memoranda; and (3) the Office of the USTR's decision to withhold, under FOIA Exemption 5, a memorandum alleged to be attorney work-product. These documents are responsive to plaintiff's April 17, 1998 FOIA request to the Department of State, its October 6, 1998 FOIA request to NARA, and its April 17, 1998 FOIA request to the USTR. Plaintiff has moved for summary judgment on the non-disclosure of the State Department's Record Disposition Schedule and the non-disclosure of the USTR memorandum only. Plaintiff has moved for judgment on the pleadings with respect to the NARA documents.[10] Defendants have moved for summary judgment with respect to the State Department's Record Disposition Schedule, the NARA documents, and the USTR memorandum.

### A. Exemption 1 Claims

Under Exemption 1 of the Freedom of Information Act, agency documents need not be disclosed if they are:

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order. 5 U.S.C. § 552(b)(1).

As of October 14, 1995, the executive order in effect is Executive Order 12,958. Withheld documents must be properly classified in accordance with the procedural criteria of the governing Executive Order, *Lesar v. Dept. of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980), which in this case is § 1.7 of Executive Order 12,958. Section 1.7 provides that classified documents must be marked with the level of classification, the identity of the original classifying authority, the agency and office of origin, if not otherwise evident, and the document's declassification information. Compliance with Executive Order 12,958 is established by showing that an original classifying authority classified the information; the information is owned by, produced by or for, or is under the control of the U.S. Government; the information falls within one of the seven categories listed in § 1.5; and release of the information "reasonably could be expected to result in damage to the national security." Executive Order 12,958 § 1.2. In addition, when documents are withheld as classified which were not classified at the time of the FOIA request, under § 1.8(d) of Executive Order 12,958, the agency must show that the classified information was not previously disclosed to the public under proper authority and that the classification was undertaken with the personal participation or under the direction of the agency head. *Id.* at § 1.8(d).

The D.C. Circuit defined the standard of judicial review for national security claims under Exemption 1 in *Halperin v. CIA*, 629 F.2d 144 (D.C.Cir.1980). Summary judgment is proper if an agency's affida-

---

procedural rule and thereby is exempt from the APA's requirements of notice and comment, the Court need not address whether a specific FOIA notice rule would trump the general notice and comment provisions of the APA.

**10.** Public Citizen also moved for judgment on the pleadings based upon the State Depart-

ment's failure to respond within the allotted time period to the June 22, 1998 FOIA request. However, the State Department subsequently turned over documents responsive to the June 22, 1998 request, and plaintiff has not yet raised any challenge to any FOIA exemption claimed in connection with that request.

vits are reasonably specific in describing the withheld documents, the justification for withholding them demonstrates a "logical connection" between the information and the claimed exemption, and the affidavits are not controverted by contrary evidence or evidence of bad faith. *See also Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). If the agency's affidavits can pass this test, *in camera* review may be inappropriate, because "substantial weight" must be accorded to the affidavit. *King v. United States Dep't. of Justice,* 830 F.2d 210, 217 (D.C.Cir. 1987). Rather than conducting a detailed inquiry, the court may defer to the expert opinion of the agency, because "judges lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Halperin,* 629 F.2d at 148; *see also Salisbury v. United States,* 690 F.2d 966, 970 (D.C.Cir. 1982) (holding that because executive departments responsible for national defense and foreign policy matters have "unique insights into the adverse affects that might occur as a result of public disclosure," courts must "accord substantial weight to an agency's affidavit concerning the details of the classified status of a disputed record.")

The documents at issue are (1) Chapter 17 of the State Department's Records Disposition Schedule [partially withheld], (2) two NARA records disposition schedules relating to the State Department, numbered N1–59–93–42 and N1–59–92–9 [partially withheld], and (3) the appraisal memoranda accompanying N1–59–93–42 and N1–59–92–9 [partially withheld].

### 1. Doc. No. A000008—Chapter 17 State Department's Records Disposition Schedule

■ Chapter 17 of the State Department's Records Disposition Schedule (Document No, A000008) relates to records originating with the Bureau of Intelligence and Research. Chapter 17 consists of 119 file descriptions; all but 17 files were released to Public Citizen. Each file has

four fields: a name field, a "Description" field, a "Disposition" field, and a "DispAuthNo" field. The first field identifies the subject matter of the document. The second field provides a brief (1–3 sentence) description of the document. The third field identifies the document as "permanent" or "temporary" and the disposition of the document once it is no longer used by the agency. The fourth field lists the disposition authorization number.

The Records Disposition Schedule, which is attached as an exhibit to the declaration of Margaret Grafeld, is marked at the top of every page with the "confidential" level of classification. The first page of the schedule identifies Margaret Grafeld as the original classifying authority. It is apparent from the title of the document that the Department of State is the agency of origin. The unclassified files in the schedule are so identified and are fully disclosed. The classified files are designated "confidential" in the name field. The "Description" and "Disposition" fields have been redacted from each of the files marked "confidential." The "DispAuthNo" field has not been redacted.

The State Department has submitted two declarations in support of the Exemption 1 withholding, one by Margaret Grafeld, the U.S. Department of State's Information and Privacy Coordinator and the Director of the Department's Office of Information Resources Management Programs and Services, and one by Frank Machak, the Deputy Assistant Secretary for Records and Publishing Services for the Department of State. Both Grafeld and Machak attest that they are authorized to classify and de-classify national security information. Both attest to their personal knowledge of Document No. A000008. Machak further declares that he is authorized to make a classification determination on a document by document basis after a FOIA request has been received, as specified in § 1.8(d). Machak(1) Decl. at para. 2. Mr. Machak declares, "I have personally reviewed document

A000008 and the information previously classified by Edward B. Abington, Principal Deputy Assistant Secretary for the Bureau of Intelligence and Research and withheld by Ms. Grafeld in this case, and I have been authorized and directed by the Under Secretary for Management to find that the information continues to warrant classification, at the CONFIDENTIAL level, under Section 1.5(c) and (d) of E.O. 12,958...." Machak(1) Decl. at para. 4.

The Grafeld and Machak Declarations state that the withheld portions of Chapter 17 describe sources and methods of intelligence collection, analysis and coordination; mention substantive areas in which intelligence activities have been or may be carried out; and name persons and organizations that have access to intelligence information or participate in the collection, analysis, planning, coordination, or implementation of intelligence activities. *See* Grafeld Decl. at para. 15. and Machak(1) Decl. at para. 4. On that basis, the State Department determined that those portions of Chapter 17 fell within § 1.5(c) of Executive Order 12,958. *Id.* Furthermore, because the withheld sections concerned foreign relations and activities of the United States, including the identities and activities of confidential sources, the State Department determined that those sections were also appropriately classified as "confidential" under § 1.5(d) of the Executive Order. *Id.* Portions of the withheld document reveal "confidential government assessments of situations, leaders and principle personalities of other countries" and, if disclosed at this time, could "inject friction into, or cause damage to, our bilateral relationships." Grafeld Decl. at para. 17.

The State Department has attested that the release of the withheld portions of Chapter 17 could reasonably be expected to harm national security and U.S. foreign policy interests, because disclosure of the sources, methods, analysis and names contained therein could frustrate future intelligence efforts, enable entities opposed to U.S. foreign policy objectives to undertake countermeasures, and impair the effective development of U.S. foreign policy. *Id.* Thus the affidavits demonstrate that the documents were properly classified at the CONFIDENTIAL level under Executive Order 12,958, § 1.3.

Because the withheld portions of Chapter 17 were not classified prior to Public Citizen's FOIA request, in order to show that the agency has complied with the procedural requirements of the Executive Order in classifying the document, the Department of State must show that the document has not previously been released to the public under proper authority and that the document has been classified by or at the direction of a specially designated official. *See* § 1.8(d), Executive Order 12,958. Public Citizen alleges that the State Department has failed to meet these criteria. The Court disagrees. The Grafeld Declaration states that, "as part of [the agency's] review [in response to plaintiff's FOIA request], the Department determined that these 17 items, while not originally classified, had not previously been disclosed to the public under proper authority." Grafeld Decl. at para. 12. Given the weight accorded to agency declarations and the absence of any contradictory evidence, the Court must accept the agency's representation that the 17 items were not previously released to the public. *Taylor v. Dep't. of the Army,* 684 F.2d 99, 109 (D.C.Cir.1982) ("[I]n view of the knowledge, experience and positions held by affiants ... their affidavits are entitled to the utmost deference.")

Public Citizen also contends that the State Department has failed to show that portions of the withheld entries are not segregable. In support of its position, plaintiff argues that the disposition date for each entry should have been released as non-sensitive. Plaintiff does not cite any authority suggesting that courts or agencies must parse out every word or phrase in determining whether information has been appropriately classified. The

D.C. Circuit has held that an agency must provide "reasonable segregation" as to the portions of a document that are allegedly exempt. *Ray v. Turner*, 587 F.2d 1187, 1197 (D.C.Cir.1978). The district court judge "is not called upon to take on the role of censor going through a line-by-line analysis for each document and removing particular words." *Id.* "If, however, the problematic material appears in a particular place or places that can be manageably identified," the agency cannot bypass segregation just because it is a chore. *Id.*

On one hand, the Grafeld Declaration explicitly states that the partially withheld document was "re-reviewed for reasonable segregation of non-exempt information and I have determined that no segregation of meaningful information in the withheld document can be made without disclosing the information warranting protection under the FOIA." Grafeld Decl. at para. 10. Ms. Grafeld's Declaration is entitled to considerable weight, and in the absence of contrary evidence or evidence of bad faith, this Court will not substitute its judgment for that of the agency. *Stein v. Dep't. of Justice*, 662 F.2d 1245, 1253 (7th Cir.1981) (holding that the scope of judicial review in the Exemption 1 context is not a "fresh determination of the legitimacy of the classification status of each document.") Moreover, the fact that the State Department, of its own accord, re-reviewed its withholdings and released certain additional entries indicates that the agency has been mindful of its obligation to release any segregable information.

■ On the other hand, the disposition dates are manageably identified and easily segregable. The Court disagrees with Public Citizen that a lack of diligence should be inferred from the State Department's failure to provide the disposition dates, since the obligation to provide "reasonably segregable information" can fairly be interpreted as an obligation to segregate "meaningful information." However, because the disposition dates are easily segregated and apparently would be mean-ingful information for Public Citizen's purposes, and because it is not apparent to the Court that the disposition dates contain sensitive information justifying their non-disclosure, the Court will instruct the State Department to release, within two weeks, the disposition dates for the withheld entries.

Accordingly, the Court finds that the Grafeld and Machak Declarations satisfy the summary judgment requirements for withholding documents under Exemption 1, because they are reasonably specific in describing the withheld documents and the justification for withholding them, demonstrate a "logical connection" between the information and the claimed exemption, and are not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). However, the State Department shall, within two weeks from the date of this Opinion, disclose the disposition dates of the withheld documents to Public Citizen as segregable information.

## 2. NARA Records Disposition Schedules and Appraisal Memoranda

■ On October 6, 1998, Public Citizen submitted a FOIA request to NARA for certain NARA records disposition schedules and the appraisal memoranda that accompanied them. The record disposition schedules are NARA documents which officially designate the disposition of certain types of agency records, based upon NARA's appraisal of the documents at issue. The records disposition schedule provides mandatory instructions for the storage or disposal of categories of agency records, once those records are no longer needed for current government business. Ronin Decl. at para. 4. An agency drafts a proposed schedule which it submits to NARA. After appraising the records, NARA designates the records as disposable "temporary records" or as "permanent records" to be transferred to the National Archives for preservation and research. *Id.* This appraisal is set forth in an appraisal memorandum. Public Citizen's

FOIA request asked for four records disposition schedules and their accompanying appraisal memoranda. *Id.* NARA released two of the schedules and two of the memoranda in their entirety and partially withheld the other two schedules (N1–59–92–9 and N1–59–93–42) and their accompanying memoranda (dated March 16, 1992 and March 9, 1994).

The NARA records disposition schedules and appraisal memoranda at issue describe and discuss certain State Department records concerning the activities of the Bureau of Intelligence and Research. Ronin Decl. at para. 6. The information contained in the NARA disposition schedules was included in the disposition schedules that were the subject of the Machak(1) and Grafeld Declarations, made in connection with the plaintiff's earlier FOIA request to the State Department. Even though the documents technically are NARA-owned, because NARA does not have classification authority over State Department information, the State Department is the relevant classifying authority, and NARA abides by the State Department's determination. *Id.* at para. 7. Accordingly, the State Department has submitted a second declaration by Frank Machak in support of the decision to withhold the NARA schedules and appraisal memoranda.[11] At the time that NARA received the plaintiff's FOIA request, the documents at issue had not been classified.

The Second Machak Declaration establishes that Mr. Machak is the classifying authority with the power to classify documents pursuant to a FOIA request under § 1.8 of Executive Order 12,958. Machak(2) Decl. at para. 4. The declaration confirms that "the information in the NARA appraisal memoranda that is based upon the State Department information in schedules N1–59–92–9 and N1–59–93–42 with respect to which the (b)(1) exemption has been applied, meets the classification criteria under Executive Order 12,958." Machak(2) Decl. at para. 7. Parts of both NARA appraisal memoranda are classified CONFIDENTIAL[12] and portions of the March 9, 1994 appraisal memorandum are classified as SECRET[13]. Machak(2) Decl. at para. 9.

11. Public Citizen filed motions to strike the second declaration of Frank Machak and the declaration of Geraldine Phillips for failure to comply with Fed.R.Civ.P. 56(e). Both motions are denied. These declarations sufficiently demonstrate that they are based on personal knowledge. *Londrigan v. F.B.I.*, 670 F.2d 1164 (D.C.Cir.1981) (holding that an agency official may testify as to matters learned from review of agency documents in the course of duty); *Kay v. FCC*, 976 F.Supp. 23 (D.D.C.1997) (allowing declarations accounting for searches of documents to contain hearsay.) As in the case of the Phillips declaration, where an agency employee is responsible for supervising the document search, that employee's declaration is acceptable, even though based, by necessity, upon second-hand information gathered from other employees. *See SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991). Although the Machak(2) Declaration addresses documents technically owned by NARA, the NARA disposition schedules were created from State Department documents and Mr. Machak says that he is familiar with the NARA documents, thus providing an adequate basis for personal knowledge. Further, the Machak(2) Declaration provides as much

public information as is feasible, in light of the national security interests at issue. Where "extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed," it is appropriate for the agency to classify its declarations to the extent necessary to protect national security. *Lykins v. U.S. Dept. of Justice*, 725 F.2d 1455, 1463–64 (D.C.Cir.1984). The Machak(2) Declaration discloses a description of the documents, the amount of material excised, the claimed exemptions, and the justification for those exemptions. *Id.* FOIA does not require the government to disclose in its affidavits the information being withheld. *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784 (D.C.Cir.1980).

12. The designation "CONFIDENTIAL" is applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe. Machak(2) Decl. at para. 9

13. The designation "SECRET" is applied to information, the unauthorized disclosure of which reasonably could be expected to cause

According to the Second Machak Declaration, the withheld State Department information contained in the NARA documents describes intelligence activities, sources, and methods that could "frustrate the ability of the U.S. Government to acquire information necessary to the formulation and implementation of U.S. foreign policy," placing the documents within § 1.5(c) of Executive Order 12,958. *See* Machak(2) Decl. at para. 11. The State Department also concluded that the withheld sections were appropriately classified as "confidential" under § 1.5(d) of Executive Order 12, 958, because they include the identities and activities of confidential sources abroad, sensitive information on U.S.—foreign relations, and the foreign activities of U.S. officials. *Id.* at para. 13. .

Mr. Machak has affirmed that the release of the withheld portions of the NARA documents could reasonably be expected to harm national security and U.S. foreign policy interests, because disclosure of the sources, methods, analysis and names contained therein could frustrate future intelligence efforts, enable entities opposed to U.S. foreign policy objectives to undertake countermeasures, and impair the effective development of U.S. foreign policy. *Id.* The Court is satisfied that the State Department and NARA have provided as much information on the public record in support of withholding the NARA schedules and appraisal memoranda as is feasible, in light of national security interests. However, as Public Citizen has observed, a significant portion of the Second Machak Declaration has been classified and has not been made available to either the Court or the plaintiff. Before making a final decision on the propriety of withholding the NARA documents, the Court believes that it would be appropriate to review the entire Second Machak Declaration *in camera*.

Public Citizen has argued that an *in camera* review of an agency declaration is not proper, since it does not afford Public Citizen the opportunity to rebut the agency's assertions. While the Court recognizes that *in camera* declarations are disfavored as a first line of defense, this is not a case in which the State Department has made no public record of its reasons for claiming the exemption. Unlike defendant CIA in *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C.Cir. 1976), which provided no public statement except that the agency could "neither confirm nor deny" the existence of the requested documents, the State Department has submitted three public declarations that describe the processing of Public Citizen's FOIA request, the decision to classify portions of the requested documents, the subject matter of the documents, the justification for Exemption 1 classification, the perceived danger involved in releasing the information, and the location, storage, and likelihood of public access prior to the documents' classification. As plaintiff acknowledges, classified declarations may be considered once the agency has made a threshold showing on the public record. The proper procedure for reviewing an agency's decision to withhold records responsive to a FOIA request under Exemption 1 is as follows: "(1) The trial court must make a de novo review of the agency's classification decision, with the burden on the agency to justify non-disclosure. (2) In conducting this review, the court is to give 'substantial weight' to affidavits from the agency. (3) The court is to require the agency to create as full a public record as possible, concerning the nature of the documents and the justification for non-disclosure. (4) If step (3) does not create a sufficient basis for making a decision, the court may accept classified affidavits *in camera*, or it may inspect the documents *in camera*. This step is at the court's discretion [subject to] certain

serious damage to the national security that the original classification authority is able to

identify or describe. *Id.*

guidelines. . . ." *Public Education Center, Inc. v. Dep't. of Defense*, 905 F.Supp. 19, 22 (D.D.C.1995) (quoting *Hayden v. NSA*, 608 F.2d 1381, 1384 (D.C.Cir.1979)); *see also Schlesinger v. Central Intelligence Agency*, 591 F.Supp. 60, 65 (D.D.C.1984) (relying on a combination of public and *in camera* affidavits to hold that materials were properly withheld under Exemption 1.) In this case, the entries withheld are concise descriptions of State Department records, the very existence of which, the defendants contend, reveal sensitive aspects of State Department intelligence activities. To describe these files in greater detail in a public declaration would reveal the information that the agency is trying to withhold. Thus, the Court orders the State Department to submit, within two weeks, the entire Second Machak Declaration for *in camera* review. The Court will reserve judgment on the propriety of the Exemption 1 claim, pending further review of the declaration.

In addition to showing that the withheld documents satisfy the substantive criteria of Exemption 1, the agency must demonstrate that it followed the proper procedure in classifying the documents. Public Citizen alleges that the State Department has not met either criteria. Because the withheld NARA records disposition schedules and appraisal memoranda were not classified prior to Public Citizen's FOIA request, the government must show that the documents were not previously released to the public under proper authority and that they were classified by or at the direction of a specially designated official. *See* § 1.8(d), Executive Order 12,958. To supplement the Second Machak Declaration, defendants have submitted the declaration of Geraldine Phillips, Deputy Assistant Archivist for Records Services at NARA.

It is clear that the NARA documents have been classified at the direction of a designated official, Mr. Machak. Machak(2) Decl. at para. 4. What is less clear is whether the documents were publicly released prior to their classification. The Second Machak Declaration states that the State Department information contained within the NARA records disposition schedules and appraisal memoranda was never released publicly under official State Department authority. However, the Phillips Declaration raises the possibility that the NARA records disposition schedules and appraisal memoranda may have been viewed by the general public prior to their classification in October 1998. Ms. Phillips states that copies of the NARA schedules and appraisal memoranda were distributed to the several units within NARA where, in some instances, those documents were placed in publicly accessible files or binders. Phillips Decl. at para. 6–10. For example, copies of the schedules and appraisal reports were sent to the Washington National Records Center, where the schedules were placed in binders located in a file area open to members of the public. Thus, it is "possible" that "a researcher asked for and was given access to one or both of the schedules." *Id.* at para. 10. It is less likely that the appraisal memoranda were ever disclosed to the public, because they apparently were never kept in a general access area. Nonetheless, Ms. Phillips admits that it is "possible" that a researcher may have gained access to the schedules or appraisal memoranda at any one of the various NARA offices.

 Public Citizen contends that it is entitled to discovery on the issue of public disclosure. The Court disagrees.[14] "Discovery is to be sparingly granted in FOIA actions." *Public Citizen Health Research Group v. Food and Drug Admin.*, 997 F.Supp. 56, 72 (D.D.C.1998). The remote possibility of very limited public disclosure described in the Phillips Declaration is not fatal to subsequent clas-

---

14. By order dated December 17, 1998, Judge Sullivan denied an earlier motion by Public Citizen for discovery prior to adjudication of defendants' motion to dismiss in part and for summary judgment.

sification. The government is not forced to prove a negative in order to assert a valid claim of exemption. *See Davis v. United States Dep't. of Justice*, 968 F.2d 1276, 1279 (D.C.Cir.1992) (holding that the FOIA requester bore the burden of proving that a permanent public record existed of the exact portions of the tapes that he alleged to have been publicly released, and showing that some of the tapes were played in court was not sufficient to shift the burden of proof to the government.) To defeat a claim of exemption on the basis of public disclosure, the disclosure must be widespread and must come from an official source. *See Afshar v. Dept. of State*, 702 F.2d 1125, 1130–31 (D.C.Cir. 1983); *Military Audit Project v. Casey*, 656 F.2d 724, 741–45 (D.C.Cir.1981); *Simmons v. United States Dep't. of Justice*, 796 F.2d 709, 711 (4th Cir.1986). To compel disclosure of information over an agency's otherwise valid claim of exemption, the requested information must be as specific as the information earlier released, must match the information earlier released, and the release must have occurred through an official, documented disclosure. *See Fitzgibbon v. Central Intelligence Agency*, 911 F.2d 755, 765 (D.C.Cir.1990). Moreover, disclosure by one agency does not defeat an exemption claim made by another agency regarding the same information, because such disclosure would not qualify as "official" disclosure by the agency from which the information is sought. *See Frugone v. Central Intelligence Agency*, 169 F.3d 772, 774 (D.C.Cir.1999).

The Phillips Declaration clearly indicates that NARA has no record and is not aware of any official public release of the requested documents, and, under the circumstances, it is exceedingly unlikely that the documents were ever widely released to the public. Ms. Phillips has submitted a highly detailed and candid account of NARA's record-keeping practices. Discovery by the plaintiff on this topic would add nothing to the resolution of this issue. The Court is less persuaded by the Second Machak Declaration with respect to his determination that the information contained within the NARA documents was never publicly released by the State Department. The Court therefore requests that, within the next two weeks, Mr. Machak supplement his declaration to explain the basis for his conclusory statement that this information was not publicly released. The information pertaining to public release should be included in the non-classified portion of the declaration. *See Founding Church of Scientology v. United States Marshals Service*, 516 F.Supp. 151, 156 (D.D.C.1980) (allowing the defendant agency the opportunity to supplement its declarations, rather than permitting discovery by the plaintiff.)

**B. Exemption 5 Claim**

Exemption 5 of the FOIA protects from public disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been construed to protect "those documents, and only those documents that are normally privileged in the civil discovery context." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). In this case, the document withheld (in its entirety) is a memorandum from USTR counsel to the USTR chief of staff analyzing a recent court opinion. The USTR has claimed exemption under the attorney work-product privilege.

The attorney work-product privilege is recognized as a ground for withholding documents under FOIA Exemption 5. *See Burka v. United States Dep't. of HHS*, 87 F.3d 508 (D.C.Cir.1996). The attorney work-product privilege protects documents and other memoranda prepared by an attorney in anticipation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The privilege is not limited to civil proceedings, but extends to adminis-

**30**

trative proceedings as well. Exemption 5 ensures that members of the public may not obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency. *See Schiller v. NLRB*, 964 F.2d 1205,1208 (D.C.Cir. 1992).

In support of its Exemption 5 claim, the USTR has submitted a declaration by Bruce Overton, Associate General Counsel in the Office of the USTR charged with advising the agency on FOIA matters. Mr. Overton states that he personally reviewed the three documents retrieved in response to Public Citizen's FOIA request and determined that one of the documents, dated October 23, 1997, had to be withheld subject to FOIA Exemption 5, because it contained "legal analysis and advice from USTR counsel to the USTR Chief of Staff" which "related to" the pending litigation *Public Citizen v. Carlin*, a lawsuit filed by the plaintiff against the USTR and other federal agencies. Overton Decl. at para. 4. Public Citizen argues that the Overton Declaration is conclusory and insufficient to justify withholding the memorandum, which could have been prepared for non-litigation reasons.

■ The Court agrees that the Overton Declaration is not sufficiently specific to establish that the document, in its entirety, is properly withheld under Exemption 5. The declaration is far too general, providing no indication as to the recipients of the document, the posture of the case, and subject matter of the information withheld. Although the work product privilege extends to documents prepared in anticipation of foreseeable litigation, even where no specific claim is contemplated, *see Schiller*, 964 F.2d at 1208 (D.C.Cir. 1992), documents prepared in the agency's ordinary course of business, not sufficiently related to litigation, may not be accorded protection. *See Hennessey v. United States Agency for Int'l Dev.*, No. 97–1113, 1997 WL 537998, at *5 (4th Cir. Sept. 2, 1997) (holding that a report commissioned to complete project was not prepared "be-

cause of the prospect of litigation," despite the threat of suit.) The "primary motivating purpose behind the creation of a document" must be to aid in possible future litigation. *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982) (holding an investigative report prepared in the ordinary course of business not immunized by work-product privilege.) The Overton Declaration does not permit the Court to determine whether the "primary motivating purpose" behind the creation of the USTR memorandum was to aid in future litigation. Mr. Overton's assertion that the memorandum "related to" pending litigation is insufficient. Furthermore, the Overton Declaration makes no mention of whether the USTR reviewed the memorandum for segregability of any non-exempt portions, as the agency was required to do. *See Mapother v. Dept. of Justice*, 3 F.3d 1533, 1544 (D.C.Cir.1993) (rejecting the agency's withholding of a document in its entirety pursuant to the work product privilege, where portions of the document were segregable.) Accordingly, the Court orders USTR to submit the document, within two weeks, for *in camera* review, so that the Court may properly determine the propriety of the agency's invocation of the work-product privilege.

### CONCLUSION

For the reasons stated above,

(1) Defendants' Motion to Dismiss [6–1] plaintiff's challenge to the date-of-request cut-off, generically and as applied to the April 17, 1998 and June 22, 1998 FOIA requests, is granted.

(2) Defendants' Motion for Summary Judgment [6–2] on the State Department's decision to withhold portions of Chapter 17 of the State Department's Records Disposition Schedule under Exemption 1 is granted in part and denied in part. The motion is granted with respect to all withheld material except the "Disposition" field. With respect to the disposition

dates and instructions, the motion is denied without prejudice, and the State Department is ordered to turn over the disposition information to Public Citizen within two weeks of the date of this Opinion.

(3) Defendants' Motion for Summary Judgment [6–2] on USTR's decision to withhold the alleged attorney work-product document under Exemption 5 is held in abeyance, pending the Court's *in camera* review of that document. The Court makes no ruling on this document at this time. The USTR is ordered to turn over, within two weeks of the date of this Opinion, the memorandum for the Court's *in camera* review.

(4) Plaintiff's Motion for Partial Summary Judgment [20–1] on its claim that the State Department's date-of-request cut-off is unlawful is denied.

(5) Plaintiff's Motion for Judgment on the Pleadings [31–1] with respect to its June 22, 1998 request to the State Department and its October 6, 1998 request to NARA is denied as moot, because Public Citizen has now received responses to these FOIA requests.

(6) Defendants' Motion For Partial Summary Judgment [37–1] regarding the decision to withhold the NARA documents under Exemption 1 is held in abeyance, pending the Court's *in camera* review of the Second Machak Declaration and a supplementary affidavit explaining with greater specificity the basis for Mr. Machak's assertion that the information in the NARA documents was not publicly released. The State Department is ordered to submit to the Court the entire Second Machak Declaration, with any required supplementation regarding the non-disclosure of the NARA documents, within two weeks of the date of this Opinion.

(7) Plaintiff's Motion to Strike the Second Declaration of Frank Machak [39–1] is denied.

(8) Plaintiff's Motion to Strike the Declaration of Geraldine Phillips [50–1] is denied.

(9) Defendants' Motion for a Protective Order [45–1] is granted.

(10) Defendants' Motion to Stay [44–1] is denied as moot.

The Court will hold a hearing on July 14, 2000, at 9:30 a.m. to address all remaining matters. At that hearing, the Court will rule on any outstanding issues, and thus, in accordance with Fed.R.Civ.P. 54(b), it refrains from entering final judgment in this case until after that date. The parties are directed to file a joint report with the Court by June 30, 2000, identifying the remaining issues that the Court must address and the parties' positions with respect to those issues.