276 F.3d 634 (D.C. Cir. 2002)
 Public Citizen, Appellant
v.
Department of State, et al., Appellees
 No. 00-5387
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued November 13, 2001
Decided January 25, 2002
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Appeal from the United States District Court for the District of Columbia (No. 98cv01423)
 Michael E. Tankersley argued the cause for appellant. With him on the briefs was Alan B. Morrison.
 Matthew M. Collette, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, Leonard Schaitman, Attorney, U.S. Department of Justice, and John Schnitker, Attorney, U.S. Department of State.
 Before: Edwards and Tatel, Circuit Judges, and Silberman, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge Tatel.
 Tatel, Circuit Judge:
 
 
 1
 When the State Department responds to Freedom of Information Act requests, it generally declines to search for documents produced after the date of the requester's letter. Challenging this "date-of-request cutoff" policy, appellant claims that the Department promulgated it without notice and opportunity to comment as required by the Administrative Procedure Act, and that, in any event, the policy is unreasonable both generally and as applied to appellant's particular request because it forces FOIA requesters to file multiple requests. We reject the former claim because the policy falls within the APA's exemption for "rules of agency organization, procedure or practice." Finding that the State Department has failed to substantiate its claim that an "administrative nightmare" would result were it unable to apply the date-of-request cut-off policy, however, we agree with appellant that the policy is unreasonable both generally and as applied to its FOIA request. Finally, we reject appellant's additional claim that the Department improperly invoked FOIA's national security exemption to withhold some otherwise responsive information.
 
 I.
 
 2
 The State Department processes FOIA requests in four stages. During the first stage, it mails a letter to the requester acknowledging receipt and assigning an identification number. Grafeld Decl. II p 18. This initial letter also informs the requester that the "cut-off date ... is the date of the requester's letter" and that "no documents ... originat[ing] after the date of [the] letter will be retrieved." Sforza Decl. p 6. During the second stage, the Department's Statutory Compliance & Research Division determines "which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the information requested." Grafeld Decl. II p 23. The Department then "task[s]" these various components to search for responsive documents. Id. p 28. The speed at which the tasked component completes a search depends largely on available personnel, the nature of the request and the number of outstanding requests. "By far" the most frequently tasked component is the Department's Central Foreign Policy File, a centralized automated records system containing the "most comprehensive authoritative compilation of documents," including documents "that establish, discuss or define foreign policy," as well as "official record copies of incoming and outgoing Department communications." Id. p 24. Consequently, the Central File has the "longest queue" of any Department component. Id. p 46. During the third phase of FOIA request processing, the Department reviews the retrieved documents to determine whether it should withhold any, or portions thereof, pursuant to one of FOIA's nine exemptions. During the final phase, the Department copies the documents, redacts classified material and releases them to the requester.
 
 
 3
 In April 1998, appellant Public Citizen, a non-profit, public interest organization "dedicated to the study and promotion of public health and ... consumer welfare," Appellant's Opening Br. at ii, sent a FOIA request to the Department asking for records describing its "current system for managing word processing files ... and electronic mail messages," as well as "disposition schedule[s] submitted to the National Archives concerning the transfer or disposal" of these materials. Grafeld Decl. I p 4. Three months later, the Department released seven documents in full, as well as an eighth with portions redacted pursuant to FOIA's first exemption, the national security exemption, 5 U.S.C. 552(b)(1). This final document was a thirty-five chapter "records disposition schedule," essentially a document index with each entry containing a brief description of a Department record and designating the record as "permanent" or "temporary." Ronan Decl. p 4. Although the Department initially withheld all 119 entries pertaining to the Bureau of Intelligence and Research, it eventually released all but portions of seventeen entries. According to the Department, the withheld portions describe "sources and methods of intelligence collection [that] would identify substantive areas in which intelligence activities have been carried out or might be undertaken in the future," as well as "identif[y] persons and organizations that ... participate in ... intelligence activities." Grafeld Decl. I p 17. Significantly for this case, the letter accompanying the released documents stated that although the Department typically declines to retrieve documents produced after the date of the FOIA request, the Department had waived this "date-of-request cut-off" policy as a courtesy to Public Citizen. Id. p 9.
 
 
 4
 Meanwhile, in response to the initial withholding, Public Citizen had filed suit in the United States District Court for the District of Columbia claiming that the Department promulgated the cut-off policy without the notice and comment required by the Administrative Procedure Act, 5 U.S.C. 553(b), and that the cut-off policy was unreasonable both generally and as applied to its request. Public Citizen also claimed that in withholding portions of the seventeen record entries, the Department had improperly invoked FOIA's national security exemption.
 
 
 5
 Before anything significant occurred in the district court, Public Citizen submitted two additional FOIA requests. The first, made in June, sought documents relating to "international investment issues," including discussions or negotiations of the Multilateral Agreement on Investment. Grafeld Decl. II p 43. The Department acknowledged this request with its standard letter, which included a paragraph informing Public Citizen that it would apply its usual date-of-request cut-off policy. The second request, made in October, sought four specific record disposition schedules and two related "appraisal memoranda" from the National Archives and Records Administration. Appellees' Br. at 13. The Archives released two of these schedules in full but, after consulting with the State Department (the relevant classification authority), invoked FOIA's national security exemption to withhold portions of the remaining documents that essentially duplicated information withheld in response to Public Citizen's April FOIA request. See id. (Archives documents "contained the same information in the Department of State records previously withheld as classified"); Appellant's Opening Br. at 1213 (Archives documents "included the same information in the database entries withheld by the Department"). Amending its complaint in the district court, Public Citizen challenged the application of the cut-off policy to the June request and charged that the Department had improperly classified the Archives material.
 
 
 6
 In May 2000, the district court dismissed Public Citizen's challenge to the cut-off policy as applied to the April FOIA request because the Department had in fact not applied it. The court dismissed as unripe Public Citizen's challenge to the cut-off policy generally, finding it insufficiently "crystallized," as well as Public Citizen's challenge to the cut-off policy as applied to the June FOIA request, reasoning it was "not possible ... to know" whether the cut-off policy would be applied to that request. Pub. Citizen v. Dep't of State, 100 F. Supp.2d 10, 18 (D.D.C. 2000). Finding the policy a "rule[ ] of agency organization ... or practice" exempt from notice and comment, the district court also granted summary judgment for the Department on Public Citizen's APA claim. Id. at 20-21.
 
 
 7
 Turning to the Department's invocation of FOIA's national security exemption, the district court, after examining a classified State Department declaration in camera, found that the Department had, for the most part, demonstrated that the withheld material was classifiable. At the same time, however, the court ordered the "disposition dates" on the seventeen record entries released because they were "apparently ... meaningful" to Public Citizen and easily segregable. Id. at 25. Because in responding to Public Citizen's FOIA request, the Department had classified some information the organization sought, the district court held that pursuant to Executive Order 12,958, the Department and Archives had to show that they had not previously released the withheld portions. Id. at 22 (citing Exec. Order No. 12,958 1.8(d) (requiring agencies classifying information in response to a FOIA request to show that they have not previously released the information)). Although the district court found that the two agencies had generally satisfied this burden, it ordered the Department to file a supplemental declaration addressing whether it had ever previously disclosed the information contained in the Archives documents. As part of its ruling on the public disclosure issue, the district court rejected Public Citizen's arguments that the government declarants lacked "personal knowledge" of agency procedure, and thus denied Public Citizen's motion to strike the relevant portions of the declarations. Id. at 26 n.11. It also denied Public Citizen's motion for additional discovery. After the Department filed its supplemental declaration, the district court entered final judgment for the Department.
 
 
 8
 Public Citizen appeals the district court's dismissal of its challenges to the reasonableness of the cut-off policy as unripe and the grant of summary judgment with respect to the remaining claims, as well as the district court's discovery and evidentiary rulings. We review the former de novo, Wilson v. Pena, 79 F.3d 154, 160 n. 1 (D.C. Cir. 1996) ("Our standard of review under Federal Rules 12(b)(6) and 56 is the same: de novo."), and the latter for abuse of discretion, White v. Fraternal Order of Police, 909 F.2d 512, 517 (D.C. Cir. 1990) (reviewing district court's discovery ruling for abuse of discretion); O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 986 (7th Cir. 2001) (reviewing district court's decision to strike parts of an affidavit for abuse of discretion).
 
 II.
 
 9
 We begin with Public Citizen's claim that the Department unlawfully promulgated the cut-off policy without the notice and opportunity to comment required by the APA. The Department responds that its cut-off policy is procedural and thus covered by the APA's exemption from notice and comment for "rules of agency organization, procedure, or practice," 5 U.S.C. 553(b)(3)(A). According to Public Citizen, the cut-off policy cannot be considered procedural because it "substantially ... affects rights" by "needlessly multipl[ying] the number of FOIA requests that must be submitted to obtain access to records." Appellant's Opening Br. at 33-34. We have, however, characterized agency rules as procedural even where their effects were far harsher than the Department's date-of-request cut-off policy. For example, in Ranger v. FCC, we found an agency rule establishing a cut-off date for the filing of radio license applications to be procedural even though the failure to observe the rule cost appellants a radio broadcast license. 294 F.2d 240, 243-44 (D.C. Cir. 1961).
 
 
 10
 As we recognized in American Hospital Ass'n v. Bowen, "[o]ver time, our circuit in applying the 553 exemption for procedural rules has gradually shifted focus from asking whether a given procedure has a 'substantial impact' on parties to ... inquiring more broadly whether the agency action ... encodes a substantive value judgment." 834 F.2d 1037, 1047 (D.C. Cir. 1987) (citation omitted). This "gradual move," we noted, "reflects a candid recognition that even unambiguously procedural measures affect parties to some degree." Id. More recently, in JEM Broadcasting Co. v. FCC, we found that FCC "hard look rules," which required the dismissal of flawed license applications without leave to amend, were procedural despite their sometimes harsh effects. 22 F.3d 320, 327-28 (D.C. Cir. 1994). In doing so, we rejected the argument that the rules encoded substantive value judgments because they valued applications without errors over those with minor errors. Id. Clarifying the American Hospital standard, we held that in referring to "value judgments" in that case, we had not intended to include "judgment[s] about what mechanics and processes are most efficient" because to do so would "threaten[ ] to swallow the procedural exception to notice and comment, for agency housekeeping rules often embody [such] judgment[s]." Id. at 328.
 
 
 11
 Because the Department's cut-off policy applies to all FOIA requests, making no distinction between requests on the basis of subject matter, it clearly encodes no "substantive value judgment," Am. Hosp., 834 F.2d at 1047. To be sure, the policy does represent a "judgment" that a date-of-request cutoff promotes the efficient processing of FOIA requests, but a "judgment about procedural efficiency ... cannot convert a procedural rule into a substantive one." James V. Hurson Assocs., Inc. v. Glickman, 229 F.3d 277, 282 (D.C. Cir. 2000) (internal quotation marks and citation omitted). Consequently, we agree with the district court that the Department's cutoff policy represents a prototypical procedural rule properly promulgated without notice and comment.
 
 III.
 
 12
 Before considering the merits of Public Citizen's alternative argument--that the cut-off policy is unreasonable--we must address the Department's assertion, embraced by the district court, that the policy is unripe for review either generally or as applied to the June request. Ripeness inquiry requires that we evaluate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Texas v. United States, 523 U.S. 296, 300-301 (1998) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). "[U]nder the ripeness doctrine, the hardship prong ... is not an independent requirement divorced from the consideration of the institutional interests of the court and agency." Payne Enters., Inc. v. United States, 837 F.2d 486, 493 (D.C. Cir. 1988). A case is ripe "when it presents a concrete legal dispute [and] no further factual development is essential to clarify the issues, ... [and] there is no doubt whatever that the challenged agency practice has crystallized sufficiently for purposes of judicial review." Rio Grande Pipeline Co. v. FERC, 178 F.3d 533, 540 (D.C. Cir. 1999) (alterations in original) (internal quotation marks and citation omitted).
 
 
 13
 The Department argues that Public Citizen's generic challenge is unripe because it does not apply an "across-the-board cut-off rule." Appellees' Br. at 26. In fact, the Department contends, it will "on occasion" perform a "more comprehensive search." Id. The record, however, provides little if any support for the notion that the cut-off policy is flexible. The Department's published guidance states unequivocally that "the Department has established that the cut-off date ... is the date of the initial request," http: //foia.state.gov/ faqs.asp#Q15 (last visited Jan. 4, 2002), and all Department acknowledgment letters refer to the cut-off policy as a "condition[ ] which govern[s] all [FOIA] requests," Sforza Decl. p 6. The only evidence of flexibility that the Department points to is the fact that it did not apply the cut-off policy to Public Citizen's initial FOIA request. But we have never allowed agencies to defeat judicial review of their standards by occasionally waiving them in individual cases. See, e.g., Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 91 (D.C. Cir. 1986) (holding challenge to fee waiver policy as applied moot because agency had waived fees, but finding challenge to "facial" validity of fee waiver ripe). This general principle applies with special force here: At oral argument, Department counsel was unable to give any reason for the waiver, leading us to suspect that the Department waived the cut-off policy only to avoid having it attacked by a vigorous litigant like Public Citizen.
 
 
 14
 Equally unconvincing is the Department's argument that the generic challenge is unripe because the reasonableness of the cut-off policy turns on "the particular circumstances of the case." Appellees' Br. at 27. As a non-profit organization that has "submitted ... and plans to continue to submit FOIA requests" to the Department, First Amend. Compl. p 27, Public Citizen seeks a declaration that the Department's reflexive application of the date-of-request cut-off policy to all FOIA requests is unreasonable. Public Citizen does not argue that the Department may never under any circumstances reasonably apply a date-of-request cut-off to a particular FOIA request. Although such a claim might well be impossible to adjudicate outside the "particular circumstances" of one or more FOIA requests, the claim Public Citizen mounts in this case, by its very nature, is not. Finding no "institutional interests," Payne Enters., 837 F.2d at 493, in deferring review, we think Public Citizen's generic challenge is ripe.
 
 
 15
 We reach the same conclusion with respect to Public Citizen's challenge to the cut-off policy as applied to its June request, even though the record before the district court does not indicate whether the Department in fact "exercised its discretion to retrieve documents created after the date of the request." Pub. Citizen, 100 F. Supp. 2d at 17-18. As we said in Better Government, "[w]here ... the agency has stated that the action in question governs and will continue to govern its decisions, such action must be viewed as final in our analysis of ripeness." 780 F.2d at 93. Here, the Department sent Public Citizen a letter expressly saying that it considered the date of the letter to be the "cut-off" date, thus creating a controversy ripe for judicial review.
 
 
 16
 Public Citizen argues that the cut-off policy is unreasonable because it forces the organization to "periodically ... resubmit the identical request in order to get more recent records." Appellant's Opening Br. at 30. In support of this argument, Public Citizen relies on our decision in McGehee v. CIA, 697 F.2d 1095 (D.C. Cir. 1983). In that case, a freelance journalist filed a FOIA request with the Central Intelligence Agency seeking all documents relating to the infamous Jonestown Massacre. Id. Following its usual practice, the CIA's Information and Privacy Division "tasked" the divisions most likely to possess relevant documents. Id. at 1098. Though the journalist made the initial request in December 1978, by November 1980, almost two years later, the CIA had neither released any documents nor provided any meaningful information about the status of the request. Id. at 1099. The journalist sued, claiming that the CIA's use of a date-of-request cut-off policy was unreasonable. Id.
 
 
 17
 We began by rejecting the CIA's contention that because the "language in ... FOIA and authoritative case law interpreting the statute establishes that the use of a time-of-request cut-off is always reasonable," we should "decide question from a generic standpoint." Id. at 1102. In particular, we rejected the CIA's reliance on cases holding that FOIA does not require "an agency ... [to] continuously ... update its responses," reasoning that "the question presented in this case is whether, when an agency first releases documents ... it may use a [date-of-request] cut-off." Id. "That an agency has no obligation, after it has once responded fully to a FOIA request," we noted, "has little bearing on the issue before us." Id.
 
 
 18
 We then considered the reasonableness of the date-of-request cut-off policy as applied to the journalist's particular FOIA request. The CIA defended the policy as necessary to avoid an "administrative nightmare." Id. at 1103. "Confusion," the CIA argued, "might be engendered by different agency components using different cut-off dates," fee schedules would be "disrupt[ed]" without such a policy, and it would experience increased costs from the "successive ... searches that might be necessary if the date of a final response or the date of litigation were employed as a cut-off." Id. at 1103-04 (internal quotation marks omitted). The CIA also claimed that it needed the date-of-request cut-off policy to preserve the "expeditious[ ] processing [of] relatively simple requests." Id. at 1104 n. 41. Finding the CIA's arguments "either unpersuasive or irrelevant" in the "absence of more detailed substantiation," we hypothesized an "alternative procedure[ ] without the flaws of the [date]-of-request cut-off policy and without any real potential for ... administrative nightmares," namely, that at minimum, the CIA could use as the cut-off date the date on which the Information and Privacy Division determined which components to "task." Id. at 1103-04.
 
 
 19
 According to Public Citizen, McGehee controls this case and requires that we find the State Department's cut-off policy unreasonable both generally and as applied to the June request. The Department urges us not to address these questions but instead to remand to the district court, which because it dismissed Public Citizen's claims as unripe, never reached the merits of the McGehee issue. We see no reason to remand. Not only was the Department aware of McGehee, but given the procedural posture of this case--cross-motions for summary judgment--it had every opportunity to justify its policy. See Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1032-33 (D.C. Cir. 1988) (holding that court must enter summary judgment against nonmovant who bears the burden of production and fails to meet that burden).
 
 
 20
 We need not linger long over the Department's attempts to justify its reflexive application of the cut-off policy to every request regardless of circumstances. McGehee expressly rejected the proposition that under FOIA, the "use of a time-ofrequest cut-off date is always reasonable." McGehee, 697 F.2d at 1102. Although specific circumstances in some agencies may render an across-the-board rule reasonable, the Department has made no showing that warrants such an approach in its case.
 
 
 21
 The Department advances two justifications for its cut-off policy as applied to Public Citizen's June request. It first argues that although the use of a "later cut-off date" might have resulted in the retrieval of more documents, Public Citizen would have had to "wait a longer time." Appellees' Br. at 34. As noted above, however, McGehee rejected a similar argument advanced by the CIA, 697 F.2d at 104-05 n.41, and we find the claim likewise unsubstantiated here. Because the Department has a large "backlog" of FOIA requests, Grafeld Decl. II p 2, and because Public Citizen has no way of knowing whether the Department created new responsive documents after the date of its June request, the policy's net result is to increase processing time by forcing Public Citizen to file multiple FOIA requests to obtain documents that the Department would have released in response to a single request had it used a later cut-off date.
 
 
 22
 Second, the Department points out that because the June request was not limited to a "central records system," the Department must "task various offices and components" to search for responsive records. Since searches may take place in "different components ... at vastly different times for the same FOIA request," the Department argues, a "date-ofrequest" cut-off policy avoids the "confusion of having multiple cut-off dates on a given request, and provides requesters with a clear basis for determining whether a subsequent request might be necessary." Appellees' Br. at 35-36. Again, we rejected just such a claim in McGehee, hypothesizing an alternative procedure that would utilize a "cut-off date much later than the time of the original request ... result[ ] in a much fuller search and disclosure." 697 F.2d at 1104. The same is true here: Because the Central File is typically the component searched last--it possesses the longest queue--and because, as the Department concedes, the Central File contains the "most comprehensive" collection of Department documents, Grafeld Decl. II p 46, the current policy of releasing only documents prepared before the request date permits the Department to withhold, with little or no justification, a potentially large number of relevant documents. At the very least, we think that with minimal administrative hassle, the Department could apply a date-of-search cut-off to the Central File.
 
 
 23
 In short, like the CIA in McGehee, the State Department has failed to substantiate its claim that an "administrative nightmare," 697 F.2d at 1103, would result were it unable to apply the date-of-request cut-off policy to Public Citizen's June request. In reaching this conclusion, we emphasize that nothing in this opinion precludes either the Department or any other federal agency from attempting a more compelling justification for imposing a date-of-request cut-off on a particular FOIA request.
 
 IV.
 
 24
 This brings us to Public Citizen's challenge to State's and Archives' invocation of FOIA's national security exemption. According to Public Citizen, the district court erred when it concluded that the Department (which has sole classification authority) has shown that the information withheld relates to national security. Public Citizen also argues that even if the material does relate to national security, the two agencies must show that they have never previously released the material publicly. We disagree with both contentions.
 
 
 25
 The government has the initial burden of demonstrating that requested material is classifiable. Halperin v. CIA, 629 F.2d 144, 147 (D.C. Cir. 1980). Summary judgment may be granted on this issue "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and ... they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." Id. at 148. In this case, the Department's declaration states as follows:
 
 
 26
 Withheld ... information ... relates directly to intelligence activities, sources or methods, discussed in detail in the Document Description shown below. Disclosure of this information could enable foreign governments or foreign persons or entities opposed to United States foreign policy objectives to identify U.S. intelligence activities, sources or methods and to undertake countermeasures that could frustrate the ability of the U.S. Government to acquire information necessary to the formulation and implementation of U.S. foreign policy. Disclosure of this information, therefore, "... reasonably could be expected to result in damage to the national security...."
 
 
 27
 Machak Decl. II p 11. In Halperin, we found similar language sufficient to sustain the government's burden. In that case, the CIA stated that if the names of its attorneys were revealed "representatives of hostile, foreign intelligence services working in this country [could], by a variety of techniques, ... undertake courses of action to ascertain ... other contacts [or] other locations, and then arrive at determinations whether [the attorney] is doing any other function for the [CIA]." Halperin, 629 F.2d at 149. The sworn statement in this case--that "[d]isclosure ... could enable foreign persons or entities opposed to United States foreign policy objectives to identify U.S. intelligence activities, sources or methods"--is equally specific and detailed. To be absolutely sure, like the district court, we reviewed the classified portion of the declaration and are satisfied that the government has sustained its burden.
 
 
 28
 In the face of the Department's reasonably detailed declaration, Public Citizen points to only one source of "contradictory evidence," id.: the fact that after reviewing the Archives documents, the Department turned over certain information that it had earlier refused to release in response to Public Citizen's first FOIA request. Yet we have previously declined to find subsequent disclosure as evidence of bad faith, reasoning that "to effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure." Pub. Citizen v. Dep't of State, 11 F.3d 198, 203 (D.C. Cir. 1993) (internal quotation marks and citation omitted). That principle applies here as well.
 
 
 29
 Public Citizen next claims that the government's declarations are insufficient to demonstrate that the information withheld had never been previously released because the declarants did not rely on "personal knowledge." Appellant's Opening Br. at 39. This argument rests on a misunderstanding of the burden of production. Although it is true that under certain circumstances, previously released information "cannot be withheld under exemption[ ] one," we have made clear that "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." Afshar v. Dep't of State, 702 F.2d 1125, 1129 (D.C. Cir. 1983). "This is so," we have explained, "because the task of proving the negative, that the information has not been revealed, might require the government to undertake an exhaustive, potentially limitless, search." Davis v. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992). Public Citizen points to no "specific information in the public domain" that might "duplicate that being withheld." Afshar, 702 F.2d at 1130. Instead, it argues that if researchers had requested the documents, Archives employees might have shown the documents to them. Such speculation neither satisfies Public Citizen's burden of production, cf. Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999) (plaintiff met burden by demonstrating that audio tapes containing information had been "aired publicly in open court"), nor demonstrates that the district court's denial of the organization's request for further discovery amounted to an abuse of discretion, see White, 909 F.2d at 517.
 
 V.
 
 30
 In sum, we conclude that (1) the cut-off policy is a procedural rule properly promulgated without notice and comment, (2) Public Citizen's McGehee challenges to the cut-off policy generally and as applied to its June request are ripe, (3) the cut-off policy is unreasonable both generally and as applied to Public Citizen's June request and (4) the Department and Archives properly withheld material pursuant to FOIA's national security exemption. Thus, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.
 
 
 31
 So ordered.