**CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, Plaintiff,**

v.

**OFFICE OF the UNITED STATES TRADE REPRESENTATIVE, et al., Defendants.**

**Civil Action No. 01–498 (RWR).**

United States District Court, District of Columbia.

Sept. 5, 2007.

judgment. Although there is no longer a dispute over a majority of the documents, USTR's affidavits in support of its motion for summary judgment are not sufficient to justify withholding the remaining documents at issue and USTR will be ordered to supplement those affidavits. Accordingly, USTR's motion for summary judgment will be granted in part and denied in part and CIEL's motion for summary judgment will be denied.

Area Co, EarthJustice, Oakland, CA, for Plaintiff.

John Martin Wagner, U.S. Department of Justice, Marcia N. Tiersky, Anne L. Weismann, U.S. Department of Justice, Civil Division, Jennifer Paisner, U.S. Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

RICHARD W. ROBERTS, District Judge.

The Center for International Environmental Law ("CIEL") brought this action against the Office of the United States Trade Representative, and Susan C. Schwab,[1] in her official capacity as the United States Trade Representative (collectively "USTR"), seeking documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The parties have filed cross-motions for summary

## BACKGROUND

CIEL is a non-profit public interest organization providing environmental legal services, some of which focus on the impact of trade policy on the environment. (Compl.¶¶ 4–5.) It filed a FOIA request with USTR seeking documents relating to sessions of the Negotiating Group on Investment ("NGI") for the Free Trade Agreement of the Americas ("FTAA").[2] The NGI has been working on drafting an international agreement (the "Agreement") to establish a free trade area among approximately thirty-four participating nations in the western hemisphere. In the process of these negotiations, NGI meetings were held during which the USTR provided to negotiators documents containing the attending foreign governments' proposed text and commentary for the investment portion of the Agreement. (Compl.¶ 9.)

USTR's response to CIEL's FOIA request identified forty-six documents in its office responsive to CIEL's request but

---

1. Susan C. Schwab is substituted for Robert B. Zoellick under Fed.R.Civ.P. 25(d)(1).

2. CIEL requested, *inter alia:*
 [1] United States' documents circulated or tabled during the fifth and sixth sessions of the FTAA Negotiating Group on Investment held in February and May 2000, respectively. This would include both proposed text

and any commentary, including but not limited to a discussion of what is meant by the phrase 'in like circumstances.'
 [2] All documents prepared during the inter-agency process of the United States coming to positions reflected in documents referred to above.
(Compl.¶ 10.)

withheld all forty-six documents by relying upon 5 U.S.C. § 552(b)(5), which exempts from disclosure inter-agency and intra-agency communications protected by the deliberative process privilege. (Compl. ¶ 11.) USTR asserts that it conducted a search reasonably calculated to discover all responsive documents, and CIEL does not contest that assertion.

CIEL timely appealed to the USTR's Freedom of Information Appeals Committee, which affirmed the refusal to disclose the documents and denied CIEL's request to provide either the factual portions of the documents or a fuller explanation for withholding the documents. (Compl. ¶¶ 12, 13.) After a change in the presidential administration, the USTR, upon CIEL's request, revisited its decision but found no basis for changing its initial decision. (Compl. ¶ 14.) Following the unsuccessful administrative appeal, CIEL initiated the instant action and moved for production of a *Vaughn* index. Pursuant to an order by a magistrate judge, USTR provided a *Vaughn* Index and now moves, and CIEL cross-moves, for summary judgment.

Over the course of the proceedings, the parties have reduced the number of documents at issue from forty-six to four. USTR argued that forty-one of the requested documents are exempt from disclosure under the deliberative process privilege, 5 U.S.C. § 552(b)(5), and CIEL withdrew its claim that withholding those documents was improper. Thus, summary judgment will be granted in USTR's favor as to those forty-one documents. Additionally, USTR has released another document to CIEL. (Defs.' Mot. Summ. J., Decl. of Sylvia Harrison (Harrison Decl.) at 16.)

Only documents 1, 8, 38, and 43, which USTR argues are protected from disclosure under 5 U.S.C. § 552(b)(1), remain in dispute. Each of these documents was shared with the FTAA negotiating group on investment. Document 1 explains the United States' proposed position on the phrase "in like circumstances." (Defs.' Mot. Summ. J., Ex. 5, Vaughn Index ("Vaughn Index") ¶ 1.) Document 8 delineates the United States' position on the definitions of investment, investor, and other terms. (Vaughn Index ¶ 8.) Document 38 describes the United States' position on transparency in the investment context. (Vaughn Index ¶ 38.) Finally, Document 43 sets forth the position on the terms "national treatment" and "most favored nation treatment." (Vaughn Index ¶ 43.) These four documents were classified at the "confidential" level. (Defs.' Mot. Summ. J., Decl. of Peter B. Davidson ("Davidson Decl.") at 5.)

## DISCUSSION

 Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden falls on the moving party to provide a sufficient factual record that demonstrates the absence of such a genuine issue of material fact. *See Beard v. Banks,* —— U.S. ——, ——, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006). A court must draw all reasonable inferences from the evidentiary record in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a FOIA suit, an agency is entitled to summary judgment upon demonstrating that no material facts are in dispute and that all information that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C.Cir.2001); *Weisberg v. Dep't of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980). A

district court must conduct *de novo* review of the record in a FOIA case, and the agency resisting disclosure bears the burden of persuasion in defending its action. 5 U.S.C. § 552(a)(4)(B); *see also Long v. Dep't of Justice,* 450 F.Supp.2d 42, 53 (D.D.C.2006).

■ The FOIA requires agencies to comply with requests to make their records available to the public, unless information is exempted by clear statutory language. 5 U.S.C. §§ 552(a), (b); *Oglesby v. Dep't of Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996). Although there is a "strong presumption in favor of disclosure," *Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), there are nine exemptions to disclosure set forth in 5 U.S.C. § 552(b). These exemptions are to be construed as narrowly as possible to provide the maximum access to agency information based on the overall purpose of the Act. *Vaughn v. Rosen,* 484 F.2d 820, 823 (D.C.Cir.1973).

Here, USTR must show that there is no genuine issue as to whether it properly invoked the statutory exemption authorized by § 552(b)(1) to withhold information, and that all non-exempt information that is reasonably segregable has been segregated and disclosed. Exemption 1 protects from disclosure "matters that are (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]" 5 U.S.C. § 552(b)(1). USTR justifies withholding the documents based on the classification criteria of Executive Order 12,958 which permits classification of information only if "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to national security : . . . and . . . is able to identify or describe the damage." 60 Fed.Reg. 19,825, 19,826 § 1.2(a)(4).

■ Because the party requesting disclosure is at a disadvantage to argue misapplication of an exemption given that it cannot know the precise contents of the documents withheld, a factual dispute may arise regarding whether the documents actually fit within the cited exemptions. *Vaughn,* 484 F.2d at 823–24. To enable the requesting party an opportunity to effectively challenge the applicability of the exemption and the court to properly assess its validity, the party in possession of the materials must explain the specific reason for the agency's nondisclosure. *Id.* at 826; *see, e.g., Oglesby,* 79 F.3d at 1176 ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection."). Although this explanation may include a detailed description of each document being withheld and take the form of a *Vaughn* index, this index is not always mandated and the government may satisfy its burden by other means. *Voinche v. Fed. Bureau of Investigation,* 412 F.Supp.2d 60, 65 (D.D.C. 2006) (noting that because "courts have repeatedly held that it is the function of a *Vaughn* index rather than its form that is important, . . . an agency does not have to provide an index per se"). Regardless of the form of the government's declaration, it must show why exemption is appropriate and conclusory statements and generalized claims of exemption are insufficient to justify withholding. *Vaughn,* 484 F.2d at 826; *see also Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir. 1977) ("[T]he burden which the FOIA specifically places on the Government to show that the information withheld is exempt from disclosure cannot be satisfied by the sweeping and conclusory citation of an ex-

emption...."). Where disclosures are not sufficiently detailed to permit a meaningful *de novo* review, a court may order the agency to submit more detailed disclosures. *Voinche,* 412 F.Supp.2d at 65.

■ The D.C. Circuit has set forth specific requirements to justify withholding documents under Exemption 1:

the agency affidavit must, for each redacted document or portion thereof, (1) identify the document, by type and location in the body of the documents requested; (2) note that Exemption 1 is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories of classified information authorized by the governing executive order; and (5) explain how disclosure of the material in question would cause the requisite degree of harm to the national security.

*King v. Dep't of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987). Even if Exemption 1 applies, because "[t]he focus of the FOIA is information, not documents, ... an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data,* 566 F.2d at 260; *see also Vaughn,* 484 F.2d at 825; 5 U.S.C. § 552(b) (requiring disclosure of "any reasonably segregable portion" of an otherwise exempt record).

■ Although "in conducting *de novo* review in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record," *Wolf v. Cent. Intelligence*

*Agency,* 473 F.3d 370, 374 (D.C.Cir.2007) (internal citations omitted), when the agency's affidavit is inadequate, summary judgment may be withheld and the agency required to provide a new declaration. *Cf. Campbell v. Dep't of Justice,* 164 F.3d 20, 31 (D.C.Cir.1998) (remanded because declaration provided only a sweeping conclusory assertion of anticipated harm to national security and instructed the district court to require a new declaration); *King,* 830 F.2d at 225 (remanded because affidavits inadequately described the redacted material and did not explain with sufficient specificity how disclosure would harm national security).

■ USTR makes two basic claims regarding the applicability of Exemption 1. It argues that the four documents are properly classified as confidential because they contain information that might harm foreign relations and national security, and because these documents pertain to negotiations that were expected to be maintained in confidence. (Def.'s Mot. Summ. J. at 6–7.)

First, USTR contends that the release of this information could reduce the chances of the United States' proposals being adopted. (*See* Def.'s Reply to Pl.'s Mot. Summ. J. ("Def.'s Reply"), Decl. of Regina Vargo ("Vargo Decl.") ¶ 9.) USTR explains that foreign investment activities are highly controversial issues for many of the United States' trading partners. It reasons that publishing the United States' proposal would allow the proposal to become a target for constituencies of the United States' negotiating partners who would pressure their governments not to adopt it, thereby reducing the negotiation flexibility of those partners. Ultimately, USTR asserts, disclosure could harm both the United States' near-term relations with foreign governments and its long-term

ability to obtain agreements that best serve its economic and diplomatic interests. (Vargo Decl. ¶ 9.)

CIEL contests that harm will result from public disclosure because the averments contained in the Vargo Declaration do not identify or describe with sufficient specificity how disclosure of the documents will cause the alleged harm to national security. Also, CIEL argues that because these kinds of documents have been disclosed in the past during other treaty negotiations, there is no reason to suspect that harm will now result.

Alternatively, USTR argues that disclosure of the information could create confidentiality concerns for the United States' hemispheric trading partners. (Davidson Decl. ¶ 4.) USTR submitted the declaration of Peter Davidson, General Counsel to the USTR, which states that under the operating rules of FTAA, negotiating countries "are expected to maintain each other's proposals in confidence." (*Id.* ¶ 2.) CIEL disputes this assertion regarding confidentiality because use of the operating rules to justify applicability of Exemption 1 would allow the USTR to make pre-emptive confidentiality rules and avoid judicial scrutiny of document exclusion. In addition, the operating rules, which USTR does not suggest are binding, negate contrary obli-

gations arising out of federal law. (Pl.'s Mot. Summ. J. at 9.)

The USTR has not proved the appropriateness of withholding the four documents under Exemption 1. USTR principally relies on declarations from Davidson and Regina Vargo, neither of which demonstrates a strong nexus between the release of the documents and harm to United States foreign policy. Although both declarants state that disclosure would hamper the United States' and its trade partners' ability to engage in fruitful negotiations regarding a free trade agreement, there is no showing that reduced negotiation flexibility would cause the "requisite degree of harm" to the economic and security interests of the United States.[3] *King*, 830 F.2d at 224. Additionally, the Vargo declaration, which was submitted following the magistrate judge's order to provide a declaration describing with specificity how disclosure of each document would harm national security (Pl.'s Mot. Summ. J. at 10), contains sweeping conclusory statements[4] of the harm USTR expects will result but fails to provide the basis of that conclusion. Finally, although USTR suggests that the operating rules of FTAA negotiations have a preclusive effect, it provides no specific information about the nature of these rules, including whether the United States' agreement to produce its propos-

---

3. *See* Davidson Decl. ¶ 4 ("[D]isclosure of these documents would create policy obstacles for our hemispheric trading partners which would seriously affect their ability to conclude a free trade agreement...."); Vargo Decl. ¶ 8 ("[M]any of our hemispheric trading partners, and certain of their constituencies, have strongly held views regarding the role that foreign investment should play in their national economies.... For that reason, it will be difficult for many participating countries to accept some or all of the rules and principles that the United States is seeking through the FTAA investment negotiations unless they have latitude to negotiate.")

4. The Vargo declaration uses conclusory language such as "for a variety of reasons" and "controversial" without providing facts to indicate what the reasons are or to show the basis for the defendants' conclusion that the subjects of the negotiations are controversial. The declaration submitted by USTR does not in itself provide a reasonable basis to conclude that the agency has sufficient justification for classifying the documents as confidential.

als, but refusal to provide those of its negotiating partners, constitutes a breach of the rules.

Failing to prove that there is sufficient justification for classifying the documents as confidential, USTR has not established the applicability of Exemption 1.[5] *Cf. Wolf,* 473 F.3d at 376 (noting that agency's affidavits explaining that disclosure of records regarding foreign nationals might potentially "reveal targets of CIA surveillance and . . . CIA methods" are sufficient to justify withholding under Exemption 1); *Public Citizen v. Dep't of State,* 276 F.3d 634, 644 (D.C.Cir.2002) (affirming the district court's entry of summary judgment for the government on the basis of its declaration that disclosure of the withheld information "could enable foreign governments or foreign persons or entities opposed to United States foreign policy objectives to identify U.S. intelligence activities, sources or methods").

█ Even if Exemption 1 is found to justify withholding the documents, USTR may not automatically withhold the full document as categorically exempt without disclosing any segregable portions. USTR asserts that none of the withheld documents contains segregable material. However, the record is insufficient as to this point because USTR does not explain which underlying facts in the documents are confidential in nature. *See Voinche,* 412 F.Supp.2d at 69 (noting that a government agency must provide more than "conclusory statements as to the impossibility of segregating any portions of the released material without even citing specifically which withheld documents it was referring to"). Without a more detailed description of the contents of the documents, it is not possible to ascertain if, as stated by USTR, the documents consist of solely legal analysis and contain no factual material. Accordingly, a genuine issue of material fact remains as to whether the documents should be classified as confidential and summary judgment cannot be entered for either party. *Cf. Long,* 450 F.Supp.2d at 53–54 (holding that a court may award summary judgment solely on the affidavits and declarations provided by the agency as long as the justification for invoking the exemptions is specifically detailed).

█ Finally, CIEL argues that even if Exemption 1 applies, USTR has waived its right to invoke the exemption because there has been a prior public disclosure of similar information on the internet in the form of a draft of the investment portion of the FTAA.

█ Prior disclosure of similar information does not suffice as a general waiver of a FOIA exemption; instead, it must be proven that the information requested has been officially released into the public domain. *See Wolf,* 473 F.3d at 378. " '[A] plaintiff asserting a claim of

---

**5.** Although in a supplemental filing, USTR points to *Ctr. for Int'l Environ. Law v. Office of the U.S. Trade Rep.* to further justify withholding the documents, the record submitted in that case was more detailed than the one filed here. 237 F.Supp.2d 17, 23 (D.D.C. 2002). In the prior case, CIEL requested documents pertaining to the United States–Chile Free Trade Agreement and USTR properly withheld the documents pursuant to Exemption 1. *See Ctr. for Int'l Environ. Law,* 237 F.Supp.2d at 32. USTR provided a declaration explaining not only that trade policy issues are "often sensitive and controversial," but also that disclosure of U.S. proposals would expose U.S. legal policy and strategic analysis along with the differing agency viewpoints, permitting other governments to gauge the strength of U.S. negotiating positions and exploit interagency differences. Here, the Vargo declaration fails to draw a similar connection between the disclosure and the alleged harm that would result from disclosure.

prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.' " *Id.* (quoting *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C.Cir.1983)). "The fact that some 'information resides in the public domain does not eliminate the possibility that further disclosures can cause harm[.]' " *Students Against Genocide,* 257 F.3d at 835 (quoting *Fitzgibbon v. Cent. Intelligence Agency,* 911 F.2d 755, 766 (D.C.Cir.1990)). Thus, "while the logic of FOIA postulates that an exemption can serve no purpose once information ... becomes public, we must be confident that the information sought is truly public and that the requestor receive no more than what is publicly available before we find a waiver." *Students Against Genocide,* 257 F.3d at 836 (internal quotations omitted).

Although the publicly disclosed draft contains proposals for each provision of the Agreement, the draft does not disclose the identity of the negotiating party proffering each proposal. CIEL has not met its burden of proving that the same information has already been released in the public domain. The identity of the negotiating parties has been kept confidential and whether it must be released must await a more detailed explanation of the possible harm that will result from disclosure.

### CONCLUSION AND ORDER

A genuine issue of material fact exists as to applicability of Exemption 1 and the extent to which a potential harm to the United States' negotiating efforts or breach of confidentiality may result from disclosure. Therefore, neither motion for summary judgment is supported by sufficient facts in the record to warrant judgment as a matter of law. The parties' requests for summary judgment will be

denied and the USTR will be ordered to produce additional declarations addressing how disclosure will threaten United States' foreign relations and national security and the nature of any confidentiality agreement among the FTAA negotiating parties. Accordingly, it is hereby

ORDERED that USTR's motion [33] for summary judgment be, and hereby is, GRANTED as to documents 2–7, 9–37, 39–42, and 44–46 and DENIED without prejudice as to documents 1, 8, 38, 43. It is further

ORDERED that CIEL's motion [34] for summary judgment be, and hereby is, DENIED without prejudice. It is further

ORDERED that within 45 days of the entry of this order, USTR file supplements to its disclosures in support of its motion for summary judgment.