**Kelly MCCLANAHAN,
et al., Appellants**

v.

**DEPARTMENT OF JUSTICE, Appellee**

**No. 16-5316
September Term, 2017**

United States Court of Appeals,
District of Columbia Circuit.

Filed On: January 31, 2018

Kelly Brian McClanahan, Esquire, Pro Se

Kelly Brian McClanahan, Esquire, National Security Counselors, Rockville, MD, for Plaintiff-Appellant

Lewis Yelin, Matthew M. Collette, Attorneys, U.S. Department of Justice, (DOJ) Civil Division, Appellate Staff,

Washington, DC, Channing Phillips, Esquire, U.S. Attorney's Office, (USA) Civil Division, Washington, DC, for Defendant-Appellee

Before: Henderson and Tatel, Circuit Judges, and Edwards, Senior Circuit Judge.

## JUDGMENT

Per Curiam

This appeal was considered on the record from the United States District Court for the District of Columbia, and on the briefs and oral arguments of the parties. We have afforded the issues full consideration and have determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the district court's judgment be affirmed.

In 2011, while litigating a Freedom of Information Act (FOIA) suit against the Central Intelligence Agency (CIA), attorney Kelly McClanahan came into possession of classified information. In 2012, while litigating a second FOIA suit against (*inter alia*) the CIA, McClanahan received from attorney Cori Crider a Federal Bureau of Investigation (FBI) report containing additional classified information. In 2012 and 2013, the FBI met with and interviewed McClanahan about his possession of classified information.

In the present case—a third FOIA suit, this one against the FBI—plaintiffs McClanahan and Crider submitted three FOIA requests to the FBI in 2012 and 2013. Because the plaintiffs do not, in this Court, advance any freestanding claim regarding Crider's request, *see* Appellants' Br. 18 n.19, we focus on McClanahan's two requests. In the opening paragraph of each request, McClanahan stated that the FBI had "conducted one or more investigations pertaining to me, involving my possession of classified information in the context of two federal court cases"—i.e., the two earlier FOIA suits. Joint Appendix (JA) 95, 118. He further stated that "I do not know the Case Numbers of these investigations, but at least some of the records about them would mention me or my law firm National Security Counselors ('NSC') by name." *Id.* Against that backdrop, McClanahan's FOIA requests sought "[a]ny and all records ... pertaining to me, National Security Counselors, any case numbers assigned to the above investigations, or any of the classified information I possessed." *Id.*

As the FBI would later explain in the declarations of David Hardy, Chief of its Record/Information Dissemination Section, the agency construed McClanahan's requests as seeking "records about any investigation of him or NSC in a particular context—the possession of classified information." JA 233. Having so construed the requests, the FBI "cast[ ] the widest net for responsive records" by searching its Central Records System (CRS) and its electronic surveillance indices using various phonetic breakdowns of the plaintiffs' names and a string search for "National Security Counselors." *Id.*; *see* JA 59-64. After obtaining search results, the FBI "used additional information" to "identify the actual investigation." JA 233. It then reviewed the investigative files for further responsive documents. *Id.*; *see* Letter of Appellee 2 (Jan. 11, 2018). Finally, because McClanahan's FOIA requests mentioned his communications with particular FBI employees, the FBI also searched those employees' email accounts. The FBI released hundreds of pages of responsive records. At the same time, it withheld several hundred pages as duplicative or exempt from disclosure.

The plaintiffs brought suit, challenging the sufficiency of the FBI's search and disclosure. The district court granted summary judgment to the FBI, rejecting the plaintiffs' many claims in an exhaustive opinion. *McClanahan v. DOJ*, 204 F.Supp.3d 30 (D.D.C. 2016). The plaintiffs renew their claims on appeal. We reject them largely for the same reasons the district court did. Only four of the claims warrant substantive discussion here.

*First*, the plaintiffs fault the FBI for relying on the CRS instead of searching some 15 other record systems. But the CRS is a comprehensive system that ordinarily captures all responsive records. Hardy's declarations manifest that, in this case, there was only "a limited factual basis to conclude that responsive … records" existed in systems outside the CRS, JA 64, 199, and the agency searched those systems, JA 62-65, 197-201. Because the declarations are "relatively detailed and non-conclusory," we accord them "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (internal quotation omitted). Like the district court, *McClanahan*, 204 F.Supp.3d at 47, we see nothing other than speculation that the FBI failed to turn up all responsive documents.

*Second*, the plaintiffs take issue with the FBI's search terms, which in their view rested on an unduly narrow construction of McClanahan's FOIA requests. Contrary to the plaintiffs' current characterization, however, McClanahan sought documents about the FBI's *investigation* into his possession of classified information, not "documents about the classified information" itself.* Appellants' Br. 33 (emphasis omitted). As explained above, the opening paragraph of his FOIA requests made plain that he was targeting the investigation. Granted, in subsequent paragraphs, McClanahan sought "[a]ny and all records … pertaining to me, National Security Counselors, any case numbers assigned to the above investigations, or *any of the classified information I possessed*." JA 95, 118 (emphasis added). But in light of the opening paragraph and the subjects of McClanahan's request as a whole—including records about him, his firm and "the above investigations," *id.*—the FBI reasonably construed the italicized language to seek "records about any investigation of him or NSC in [the] particular context" of his "possession of classified information." JA 233. If he had meant to make a sweeping request for all records about the classified information, regardless whether the records related to the investigation, the FBI could expect him to do so with greater precision, especially because FOIA largely exempts classified information. 5 U.S.C. § 552(b)(1).

---

* The plaintiffs also suggest the FBI had to, and failed to, search the classified information itself to ensure that the agency found all responsive records about the *investigation*, including records that do not mention McClanahan or NSC by name. Appellants' Br. 32-33. The plaintiffs make that point in a single passing sentence. Because they do not develop it further, it is forfeited. *See N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (party forfeits argument by failing to brief it or by mentioning it only "in the most skeletal way" (internal quotation omitted)). In any event, after the FBI obtained search results, it "used additional information" to "identify the actual investigation" and then reviewed the investigative files for further responsive documents. JA 233; *see* Letter of Appellee 2 (Jan. 11, 2018). That methodology "can be reasonably expected to produce the information requested," *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (internal quotation omitted), including any investigative records not mentioning McClanahan or NSC by name.

*Third,* the plaintiffs challenge the FBI's use of November 1, 2013—the date it began its search as to McClanahan's 2013 request—as the "cutoff" for responsive records. The date-of-search cutoff was consistent with agency regulations. *See* 28 C.F.R. § 16.4(a) (Department of Justice component such as FBI "ordinarily will include only records in its possession as of the date that it begins its search"). Granted, this factor alone is not conclusive. Yet the plaintiffs read our case law to establish that a date-of-search cutoff "is presumed to be reasonable." Appellants' Br. 36 (citing *Pub. Citizen v. Dep't of State,* 276 F.3d 634, 644 (D.C. Cir. 2002)). And they advance no compelling case-specific reason to require the FBI to look for responsive records that came into its possession after it began searching. *Cf. Bonner v. Dep't of State,* 928 F.2d 1148, 1152 (D.C. Cir. 1991) (declining to require "an endless cycle" of "reprocessing" "based on post-response occurrences"). Indeed, the plaintiffs do not identify any specific cutoff date they believe would be appropriate. In these circumstances, we need not decide whether a date-of-search cutoff is "presumed" to be reasonable. It suffices to say that, on this record, we cannot conclude that the FBI failed to meet its burden under *McGehee v. CIA,* 697 F.2d 1095, 1101 (D.C. Cir. 1983). Accordingly, the plaintiffs' claims to the contrary fail.

*Fourth,* the plaintiffs contend that the district court should not have accepted the FBI's ex parte declarations for in camera inspection. We review this portion of the court's decision for an abuse of discretion. *Labow v. DOJ,* 831 F.3d 523, 533 (D.C. Cir. 2016). We see none. To repeat, McClanahan sought records about the FBI's investigation into his possession of classified information. Unsurprisingly, his requests yielded classified records. The agency had to explain to the district court its "justification[s] for nondisclosure" of those sensi-

tive records. *Hayden v. NSA,* 608 F.2d 1381, 1384 (D.C. Cir. 1979). It determined that, in this case, it could not responsibly do so except by submitting some of its declarations ex parte for in camera inspection. *Hayden* authorizes that procedure for "sensitive material," *id.* at 1385, and the district court cited *Hayden* in accepting ex parte declarations here, JA 4.

We have fully considered the plaintiffs' other contentions, which we likewise reject.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.